A jury convicted Robert Thomas of murder, based on evidence that he stabbed Gleonard G. Holt to death outside a Selma lounge. Thomas was sentenced to a term of 30 years in the state penitentiary for the murder conviction. Thomas appealed to the Court of Criminal Appeals, which affirmed his conviction with an unpublished memorandum, 587 So.2d 1118. This Court granted Thomas' petition for the writ of certiorari to examine the issue whether the trial court, at a hearing on Thomas's motion challenging the State's use of its peremptory challenges as being racially discriminatory, see Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 *Page 57 
(1986), erred in refusing to require the State to produce a document that it used in exercising its peremptory challenges. The document at issue contained the misdemeanor criminal histories and driving records of the veniremembers.
Thomas alleged in his Batson motion that of the 11 peremptory challenges exercised by the State, 8 were used against blacks. At a hearing on Thomas's motion, the State, in giving its reasons for exercising its peremptory challenges, indicated that the eight black veniremembers were struck because they had a large number of misdemeanor convictions and/or bad driving records. The State indicated that one of its investigators had prepared a document detailing the misdemeanor convictions and driving records of all of the veniremembers and that it relied on this list in exercising peremptory challenges. Indeed, the record indicates that while some of the explanations given by the State for exercising its peremptory challenges against five of the eight black veniremembers who were struck are reflected in the veniremembers' actions or voir dire testimony, the explanations given for the State's other three strikes related only to the misdemeanor criminal histories and/or driving records of the black veniremembers. In giving its explanations for striking these veniremembers, the State said:
 "I struck [veniremember number 36] because he has 16 misdemeanor charges and 20 traffic tickets and two accidents. I thought he had little regard for the law. One of those being an assault on a police officer.
 ". . . I struck [veniremember number 20] because she has a misdemeanor, theft of property, third degree conviction and three traffic tickets. I felt like she would not be a good State's juror.
 ". . . I struck [veniremember number 3] because he has between his traffic tickets and his accidents, he's got 17 [sic]. I show he has 8 accidents and 11 traffic tickets. I felt like he had little regard for the law. For that reason I struck him."
After the State finished giving its reasons for the use of its peremptory challenges, Thomas' counsel asked the State if any of the white veniremembers who were not struck by the State had misdemeanor criminal histories and/or driving records worse than the eight black veniremembers who were struck by the State. Thereafter, the following colloquy took place:
 "[The State]: I can't say worse. 'Worse' is a hard word to define. I struck everyone that had misdemeanor convictions. Now when you get down to traffic, there are a number of people on this jury that may have traffic convictions and/or accidents. However, I struck those that had the largest number.
 "[Thomas's counsel]: Now I see you have a list there before you.
"[The State]: Yes.
 "[Thomas's counsel]: Judge, I would ask — Is that the list you struck from? In determining the number of citations, etc., is this the list you struck from?
 "[The State]: Well, I used that in conjunction — I used their testimony during voir dire and their answers to your questions on voir dire also.
 "[Thomas's counsel]: I move that this sheet used by the district attorney be introduced into evidence at this time or a copy thereof for the Court's viewing and also for purposes of a record, if necessary, showing the number of misdemeanor charges, traffic charges for each and every member of the venire."
The State objected to the request that it be required to produce the document containing the misdemeanor criminal histories and driving records of the veniremembers. The trial court sustained the prosecutor's objection and overruled Thomas's Batson motion.
In a recent case, Ex parte Bird, 594 So.2d 676 (Ala. 1991), we underscored the policies of Ex parte Jackson, 516 So.2d 768
(Ala. 1986), and Ex parte Branch, 526 So.2d 609 (Ala. 1987), which are our fundamental cases interpreting the United States Supreme Court's holding in Batson v. Kentucky, supra. InBird, we noted that the burden of persuasion is initially on the party *Page 58 
alleging discriminatory use of peremptory challenges to establish a prima facie case of discrimination.594 So.2d at 679 (quoting Ex parte Branch, 526 So.2d at 622). After a prima facie case has been established, there is a presumption that the peremptory challenges were used to discriminate against black jurors. Id. (quoting Ex parte Branch, 526 So.2d at 623). The State then has the burden of articulating a clear, specific, and legitimate reason for the challenge that relates to the particular case to be tried and that is nondiscriminatory. Id. Once the State has articulated a nondiscriminatory reason for challenging the black jurors, the defendant can offer evidence showing that the reasons or explanations are merely a sham or pretext. Ex parte Branch,526 So.2d at 624.
Furthermore, in evaluating the evidence and explanations presented by the State for the use of its peremptory challenges, the trial court must determine whether the explanations are sufficient to overcome the presumption of bias. Id. The trial court cannot merely accept the specific reasons given by the prosecutor at face value. Id. Rather, the court must consider whether the facially neutral explanations are contrived to avoid admitting acts of group discrimination.Id.
In the present case, neither party disputes that Thomas made a prima facie showing of discrimination by the State or that the State articulated ostensibly facially neutral explanations for its peremptory challenges. The focus of our inquiry, therefore, is on whether the trial court, in refusing to require the State to produce the document containing the misdemeanor criminal histories and driving records of the veniremembers, erroneously denied Thomas an opportunity to prove that the seemingly facially neutral explanations offered by the State were a sham or pretext.
In Branch, this Court gave several examples of the types of evidence that can be used to show sham or pretext. Perhaps the most compelling of these examples is precisely what Thomas says he was attempting to show in the present case, i.e., that "persons with the same or similar characteristics as the challenged juror[s] were not struck." Id.
The record in this case reveals that when Thomas's counsel questioned the State as to whether any of the white veniremembers who were ultimately seated on the jury had worse misdemeanor criminal histories and/or worse driving records than the black veniremembers who were struck, the State, at first, evaded the question by saying that " '[w]orse' is a hard word to define." The State went on to answer the question by saying that it "struck everyone that had misdemeanor convictions" and that it "struck those that had the largest number" of traffic convictions and/or accidents. However, when Thomas' counsel attempted to have the document listing the misdemeanor convictions and driving records of the veniremembers entered into evidence, the State objected. In response to this objection, the trial court denied the request of Thomas's counsel, thereby accepting at face value the State's assertion that no white veniremembers seated on the jury had worse misdemeanor criminal histories and/or driving records than the black veniremembers who were struck. This the trial court could not do, given our holdings interpreting Batson. See, e.g., Ex parte Bird, supra; Ex parte Branch,supra; Ex parte Jackson, supra.
We do not wish to be understood as holding that the trial court erred in this case by refusing to require the State to place into evidence the document that it used in exercising its peremptory challenges; neither do we intend this case to stand for the proposition that the State is now required to produce all notes, reports, or other documents that it uses in exercising its peremptory challenges. Extremely significant in this case, and at the heart of the reason this case must be reversed, is the trial court's accepting at face value the State's ostensibly facially neutral explanations for the use of its peremptory challenges, which were, with regard to three of the black veniremembers who were struck, based exclusively on information contained in the document to which only the State had access. If there was in this case voir *Page 59 
dire testimony substantiating the State's explanations for the use of its peremptory challenges, e.g., if the State had engaged the veniremembers in voir dire questions concerning the veniremembers' misdemeanor criminal histories and/or their driving records, or if the trial court had ordered the State to produce the document that it used in exercising its peremptory challenges, or if the trial court had examined the documentin camera, we might be in a position to affirm, rather than being compelled, as we are, to reverse and remand.
The judgment of the Court of Criminal Appeals is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
HOUSTON, J., dissents.