The appellant, Willie Williams, Jr., was convicted of murder made capital because it was committed during the course of a robbery. The jury recommended the death penalty and the court sentenced the appellant to death.
This case exemplifies the dilemma faced by appellate courts regarding time standards. Although the notice of appeal was filed on January 3, 1991, the completed record was not filed until February 28, 1992, and the last brief was filed on July 9, 1992. Oral argument was requested and was granted. This case was argued and submitted to this court on October 6, 1992, well beyond the American Bar Association 280-day time standard from notice of appeal to opinion.
The state's evidence tended to show that on April 17, 1989, Mary Mayo found the body of her daughter, Cheryl Mayo, in the living room of Cheryl's apartment. Blood was all over the apartment, and a knife, which was identified as the murder weapon, was found in the bedroom on top of a television set. A videocassette recorder was missing from the living room and a bloody towel was found on top of the television where the videocassette recorder had been.
The victim died as a result of 36 stab wounds. Many were on the hands, the arms, and upper body. Six stab wounds were to the victim's chest. Two stab wounds to the chest cut two ribs.
Early in the afternoon of April 17, 1989, Harold Justice, a taxi driver in Dothan, *Page 84 
picked up the appellant at the apartment complex where the murder occurred. The appellant was carrying a videocassette recorder with blood on it when he entered the cab. His pants had blood on them and one of his hands was wrapped in a towel that was soaked in blood. The appellant told the driver to take him to his father's house, where the appellant changed his clothes. Justice then took the appellant to a pawn shop, where the appellant pawned the videocassette recorder for $50.
Williams, the appellant, had a similar number of knife wounds on his hands and arms. It appeared that he was a frequent visitor to Mayo's apartment and that they had smoked crack cocaine together on the evening of the fatal fight.
 I
The appellant initially contends that he was denied a fair and impartial trial because, he says, the prosecutor used his peremptory strikes in a racially discriminatory manner. Specifically, the appellant asserts that the prosecutor's removal of five blacks from the venire violated the United States Supreme Court's holding in Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson, the United States Supreme Court held that the Equal Protection Clause of the United States Constitution forbids the removal of black persons from a black defendant's jury solely on the basis of their race. 476 U.S. at 89, 106 S.Ct. at 1719. This decision was expanded to white defendants in Powers v. Ohio,499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The United States Supreme Court extended the Batson ruling to civil litigants inEdmondson v. Leesville Concrete Co., Inc., ___ U.S. ___,111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). Recently, the United States Supreme Court in Georgia v. McCollum, ___ U.S. ___,112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), and a majority of this court inLemley v. State, 599 So.2d 64 (Ala.Cr.App. 1992) (Taylor, J., concurring in result only), held that the jury selection standards applicable to the prosecution in Batson also apply to defense counsel.
The moving party must establish a prima facie showing of discrimination before the court is required to entertain the reasons given for striking black prospective jurors.Batson, 476 U.S. at 93-94, 106 S.Ct. at 1721. If the moving party has shown a prima facie case, the court must then review the other party's reasons for striking black prospective jurors. In this case, the court did not rule on whether the appellant had established a prima facie case, but inquired into the prosecutor's reasons for the strikes. "[W]here a trial court has made no express finding that a prima facie case of discrimination has been established but nonetheless requires a prosecutor to explain its peremptory challenges, this court will consider such a finding to be implied and will proceed directly to evaluate the prosecution's explanations." Sims v.State, 587 So.2d 1271, 1276 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1179, 117 L.Ed.2d 423 (1992).
"When explaining the basis for its peremptory strikes of black persons, the prosecution must offer a clear, specific, and legitimately race-neutral reason for each strike."Sims, 587 So.2d at 1276. The prosecution in this case gave the following reasons for striking the black venire-members:
 Juror number 24: A Dothan narcotics officer had informed the prosecutor's office that he knew this prospective juror through the officer's work in narcotics.
 Juror number 66: She was known to be associated with members of the drug community; she knew one of the defense witnesses; and she had been verbally assaulted by a mentally ill person.
 Juror number 68: His brother had been prosecuted for murder and had been convicted of manslaughter by the Dothan district attorney's office; he did not want to be on the jury; and he also knew the defendant.
 Juror number 41: His brother had been prosecuted a number of times by the district attorney's office and was currently in prison as a result of one of those convictions. *Page 85 
 Juror number 48: He knew the defendant and one of the defense witnesses.
After hearing the reasons stated above, the trial court denied the Batson motion. The court accepted the reasons given by the prosecution at face value. This court will reverse a trial court's ruling on a Batson motion only when it is "clearly erroneous." Ex parte Lynn, 543 So.2d 709, 712
(Ala. 1988), cert. denied, 493 U.S. 945, 110 S.Ct. 351,107 L.Ed.2d 338 (1989).
In the appellant's brief, he claims that all of the above veniremembers were qualified to serve, but he is specifically concerned with the reasons for striking prospective jurors 24 and 68. He states in brief that these specific reasons given for striking these two prospective jurors were "clearly pretexts for racial discrimination." After examining the current case law, which controls our decisions, we are bound by precedent that holds that the reason given for striking juror 24 was not race-neutral. We conclude, therefore, that the trial court's ruling on appellant's Batson motion was clearly erroneous.
The reasons for striking jurors number 41, 48 and 68 were race-neutral. Striking a prospective juror because he has family members who have been convicted of a crime is a valid race-neutral reason. Powell v. State, 548 So.2d 590
(Ala.Cr.App. 1988), aff'd, 548 So.2d 605 (Ala. 1989). Also the fact that a juror knows the defendant is a valid race-neutral reason. Harris v. State, 545 So.2d 146 (Ala.Cr.App. 1988).
Further, the reason given for striking juror number 66 was race-neutral. When one of the jurors knows one of the witnesses involved in the case, that is a race-neutral reason for the strike of that juror. Williams v. State, [Ms. 89-633, September 20, 1991], 1991 WL 197836 (Ala.Cr.App. 1991), on rehearing, [Ms. 89-633, March 27, 1992], 1992 WL 92491 (Ala.Cr.App. 1992). Another reason given by the prosecutor for striking this juror was because she was known to associate with members of the drug community. This reason is suspect, as will be discussed later in this opinion. Even though a reason is suspect, however, if it is accompanied by a legitimately race-neutral reason, the strike will not violate Batson. Clark v. State, 621 So.2d 309
(Ala.Cr.App. 1992).
Thus, four of the reasons given above were race-neutral. However, the reason given for striking prospective juror number 24, because a narcotics officer had informed the district attorney's office that he "knew this juror through his drug work," without saying more, is not a sufficient ground for a strike, and so is not considered to be a race neutral reason. This reason given lends itself to abuse. This kind of language suggests that the prospective juror was suspected of dealing in or of using drugs. Officers encounter all sorts of people, other than criminals, in their work. The removal of even one juror for a non-race-neutral reason violates the United States Supreme Court's holding in Batson.
This court recently in Walker v. State, 611 So.2d 1133
(Ala.Cr.App. 1992), and the Alabama Supreme Court in Ex parteThomas, 601 So.2d 56 (Ala. 1992), faced similar issues. As Judge Patterson, writing for the majority, stated in Walker:
 "This strike was based partly on information provided by law enforcement officers that her husband sold and used drugs and that he stole in order to buy drugs. While these may be valid race-neutral reasons, see Lynn, 543 So.2d at 709, they are not susceptible to the same kind of proof as a strike based on an arrest, prosecution, or conviction, and may under some circumstances be suspect because, being susceptible to the same kind of proof, they could be easily abused. . . . A simple question to this veniremember or to the panel as a whole . . . could have alleviated any suspicions."
Walker, 611 So.2d at 1142-43. (Emphasis supplied.)
The reason given by the prosecutor for striking prospective juror number 24 was accepted at face value and was "based exclusively on information not in any way verifiable on the record before us." No *Page 86 
further questions were asked of the prosecutor concerning this reason. We are compelled to remand this cause for a new trial.Walker, 611 So.2d at 1143. As the Alabama Supreme Court stated in Thomas:
 "Extremely significant in this case, and at the heart of the reason this case must be reversed, is the trial court's accepting at face value the State's ostensibly facially neutral explanations for the use of its peremptory challenges, which were, with regard to three of the black veniremembers who were struck, based exclusively on information contained in the document to which only the state had access. If there was in this case voir dire testimony substantiating the State's explanations for the use of its peremptory challenges, e.g., if the State had engaged the veniremembers in voir dire questions concerning the veniremembers' misdemeanor criminal histories and/or their driving records, or if the trial court had ordered the State to produce the document that it used in exercising its peremptory challenges, or if the trial court had examined the document in camera, we might be in a position to affirm, rather that being compelled, as we are, to reverse and remand."
Thomas, 601 So.2d at 58-9. (See King v. State, 612 So.2d 1333
(Ala.Cr.App. 1992), holding that no violation of Thomas occurred because the court, when ruling on the Batson motion, reviewed the documents that the state relied upon in striking the prospective juror.) In Jones v. State, 611 So.2d 466 (1992), this court recently distinguished Walker and upheld the prosecutor's reason for striking a prospective juror because "the sheriff's department had 'drug problems' with that person." 611 So.2d at 468. The circumstances and reason given in this case for striking juror 24 fall far short of those inJones.
If an in camera hearing concerning this "reason" had been held, further information might have come to light that would support the reason given for the strike as race-neutral. This was done in King, above.
There was little voir dire of the prospective juror. No questions were asked of the prospective juror that would shed light on the ambiguous information the prosecutor stated he obtained from the police. This is another procedure that might have produced better information. The Alabama Supreme Court, in a recent case, stated: "The failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination." Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991).
Because a violation of Batson occurred here we must reverse the judgment of the circuit court finding the appellant guilty of capital murder and vacate the appellant's sentence to death. This cause is remanded to the Circuit Court for Houston county for proceedings not inconsistent with this opinion.
In the interest of efficiency we will address some of the issues that may reappear in subsequent proceedings.
 II
The appellant contends that statements received into evidence were obtained without his consent and while he was under the influence of crack cocaine.
For a confession to be admissible, the state must present evidence that the defendant was informed of hisMiranda[1] rights and that the confession was voluntarily given.Bush v. State, 523 So.2d 538, 554 (Ala.Cr.App. 1988).
Testimony from the suppression hearing showed that the appellant was read his Miranda rights, that he understood them, and that he did not appear to be under the influence of drugs or alcohol. The circuit court ruled that the statements were voluntary. The court's determination regarding voluntariness will stand up on appeal unless "it appears contrary to the great weight of the evidence or is manifestly wrong."523 So.2d at 554. The ruling of the trial court is supported by the record. *Page 87 
The statements made by the appellant were correctly received into evidence.
 III
The appellant next argues that the trial court erred in allowing the state to question one of the expert witnesses about testifying in another homicide case. The record reveals that the prosecution was attempting to qualify one of its witnesses as an expert. The prosecutor asked him questions concerning his testimony in previous murder cases. In framing one of these questions, the prosecutor specifically named a capital murder case in which the witness had been qualified as an expert. No reversible error occurred here. The prosecution was laying a foundation for receipt of expert testimony by establishing the credentials of the expert. The questions asked of him were relevant and material to that end. C. Gamble,McElroy's Alabama Evidence § 127.01(5)(b) (4th ed. 1991).
 IV
The appellant further asserts that it was error to allow a portion of one of the victim's ribs to be received into evidence. The rib was removed from the victim to compare the knife cut found on the rib with the knife found at the residence. Tests done by a toolmark examiner revealed that the knife found at the residence was the same knife that inflicted the cut to the rib. The portion of the rib was correctly allowed into evidence to aid in identifying the murder weapon. No error occurred here.
 V
The majority of the issues raised in the appellant's brief on appeal deal with alleged multiple instances of prosecutorial misconduct — specifically, comments made by the prosecutor to the jury and the prosecutor's waving the victim's rib around at various stages of the trial. Because this case is reversed on other grounds, we are not required to pass on the conduct of the prosecutor. Extremes of courtroom conduct may, however, invite reversal. We do not intend that this opinion be interpreted as an affirmance as to issues which were not addressed specifically.
 VI
The appellant also argues that this case cannot be adequately reviewed because the record is incomplete on appeal. The court reporter involved in this case had to be placed in court custody before the transcript of this case was filed with this court. Counsel for the appellant has pointed to numerous instances in the transcript where there are missing pages or duplicate pages. We sadly note these evidences of the bad attitude on the part of the court reporter.
For the reasons stated in part I of this opinion, the judgment in this cause must be, and it is hereby, reversed and the cause remanded to the Circuit Court for Houston County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur except BOWEN, J., concurs in result only.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).