The appellant, Annie Laura Reese, pleaded guilty in Dothan Municipal Court to theft of property in the third degree, a violation of § 9-1 Code of Ordinances, City of Dothan, and Ala. Code 1975, § 13A-8-5. She was sentenced to 180 days in the city jail, to be suspended upon payment of $200 fine and court costs. She appealed to Houston Circuit Court for a trial denovo and was convicted by a jury. She was sentenced to 180 days' hard labor for the City of Dothan, to be suspended upon payment of a $250 fine and court costs, and upon the completion of 30 days' community service. She raises four issues on this direct appeal from the circuit court conviction.
 I
The appellant, a black female, alleges that the State used two peremptory strikes in a racially discriminatory manner in violation Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986). She argues that the prosecution struck veniremember numbers 93 and 115, two of the six black veniremembers, "for no apparent reason." R. 18.
With regard to this matter, the record reflects the following:
 "MS. LOGSDON [defense counsel]: . . . There are, . . . six blacks on the jury [venire]. Two were struck by the State, I would repeat, for no apparent reason.
 "THE COURT: Okay. And the names of the two blacks that were struck were?
 "MS. LOGSDON: It's No. 93, which is B.J.W., and No. 115, which is C.H.
"THE COURT: Okay. Mr. H. and Mr. W.?
"MS. LOGSDON: Yes, sir.
"THE COURT: And does the City —
 "MR. WHITE [assistant city attorney]: Prior arrest records on both jurors.
 "THE COURT: I know Mr. H. spoke out that he had been arrested, and I'm not sure if I heard anything from Mr. W.
 "MR. WHITE: You did not. I have independent information from the police department as regards that other juror.
 "MS. LOGSDON: I would ask that he produce that independent information.
 "MR. WHITE: I've got it right here, but I'm not going to do it right to your request.
 "THE COURT: But you have verified that he has been arrested?
"MR. WHITE: Yes, sir.
"MS. LOGSDON: Has he been convicted?
"THE COURT: Do you know if he's been convicted?
"MR. WHITE: I don't know, Judge.
 "MS. LOGSDON: I object to that for the reason I think the case law would point out that it's not adequate reason absent of showing proof [sic].
 "THE COURT: The Court does understand that if you have it. Now, we can *Page 513 
bring Mr. W. in and we can determine whether or not he's been arrested before.
 "MR. WHITE: Judge, he's already been asked and he said no. I object to that.
 "THE COURT: All right, I'm satisfied that Mr. White has objective reasons for striking Mr. W. and Mr. H. I'm going to deny the motion for mistrial based on the Batson motion." R. 18-19.
The appellant argues that it was reversible error for the trial court to assume that veniremember W. intentionally concealed his alleged arrest record. She maintains that the trial court should have ordered the prosecutor to produce the alleged documentation in his possession in order to verify W.'s arrest record or, in the alternative, should have required W. to answer additional voir dire questions regarding the matter. Appellant's brief at 11-12. We disagree.
The prosecutor gave a race-neutral reason for striking veniremember H. "A veniremember's involvement in or connection with criminal activity may serve as a race-neutral reason for the strike of that veniremember." Naismith v. State,615 So.2d 1323, 1325 (Ala.Cr.App. 1993).
Veniremember W. apparently did not respond when the venire was questioned on voir dire about having been arrested. However, the prosecutor said that he had "independent information from the police department" in his possession which "verified that [the veniremember had] been arrested."
This case is governed by Newman v. State, [Ms. 1920659, May 21, 1993] 1993 WL 167923 (Ala. 1993), in which the Alabama Supreme Court "adopt[ed] Judge Bowen's dissent as the opinion of this Court." In pertinent part, that dissent stated:
 "This court has previously upheld as race neutral the reasons given by the prosecutor for striking black members of the venire that were based upon information obtained from law enforcement officers. Where this information concerns the veniremember's involvement with crime, an explanation based upon this knowledge has been upheld. . . . Sistrunk v. State, 599 So.2d 87, 88-89 (Ala.Cr.App. 1992) (strike of veniremember on basis of involvement in crime upheld where information was received from a member of the local police department); McLeod v. State, 581 So.2d 1144, 1154-55 (Ala.Cr.App. 1990) (strike of veniremember on basis of involvement in crime upheld where 'a deputy sheriff had informed the district attorney's office that this person was "dealing in drugs, but he just hasn't been caught yet" '). In Robinson v. State, 560 So.2d 1130, 1133
(Ala.Cr.App. 1989), this Court issued the following warning:
 " 'We caution that a prosecutor's exercise of a peremptory challenge of a black venireperson based solely upon the recommendation of a law enforcement officer is highly suspect. However, the underlying basis for the recommendation may supply a racially neutral reason for the exercise of a peremptory challenge.'
". . . .
 "The State is not 'required to produce all notes, reports, or other documents that it uses in exercising its peremptory challenges.' Ex parte Thomas, 601 So.2d 56, 58 (Ala. 1992).
". . . .
 ". . . An appellate court ' "may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous." ' (Emphasis added.)"
Newman v. State, [Ms. CR 91-961, November 25, 1992] 1992 WL 345602, *6 (Ala.Cr.App. 1993) (Bowen, P.J., dissenting).
 "Neither Batson nor [Ex parte] Branch
[526 So.2d 609 (Ala. 1987)] mandates that a defendant be given the opportunity to cross-examine jurors or other witnesses in order to establish that the State's reasons are a sham or a pretext. . . . A prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral. . . . The appellant's contention that he has a right to present such testimony constitutes a substantial expansion of the findings in Batson and Branch, and we decline to do so. . . . The appellant's interpretation of Batson and Branch would require trial courts to conduct a trial within a trial and *Page 514 
would needlessly lengthen trials. . . . Although defendants have the right to [rebut the government's reasons for exercising a peremptory strike] . . . under Branch, we find that the right to rebuttal does not include the cross-examination of jurors or the examination of victims, police officers, or any other individual who may have supplied the prosecutor with information about a juror which the prosecutor believes in good faith to be true. Thus, the trial court did not err in refusing to allow such cross-examination."
Smith v. State, 590 So.2d 388, 390 (Ala.Cr.App. 1991).
"[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within the trial judges's province.' " Hernandez v. New York, 500 U.S. 352,111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991). Striking veniremember W. based on incorrect information concerning his arrest history, believed to be true by the prosecutor, has no relationship to the veniremember's race. Racially motivated strikes are the evil condemned in Batson.
The appellant's reliance on Ex parte Thomas, 601 So.2d 56,58-59 (Ala. 1992), is misplaced. The appellant relies on the following portion of Thomas:
 "[A]t the heart of the reason this case must be reversed, is the trial court's accepting at face value the State's ostensibly facially neutral explanations for the use of its peremptory challenges . . . based exclusively on information contained in the document to which only the state had access. . . . [I]f the State had engaged the veniremembers in [relevant] voir dire questions . . ., or if the trial court had ordered the State to produce the document that it used in exercising its peremptory challenges, or if the trial court had examined the document in camera, we might be in a position to affirm, rather than . . . to reverse."
Ex parte Thomas, 601 So.2d at 58-59.
In Thomas, a state investigator prepared a document detailing the driving records and any misdemeanor convictions of all of the veniremembers and the State relied on this information in exercising its peremptory challenges. The State used 8 of 11 peremptory challenges to remove blacks and gave as a reason for those strikes that the veniremembers either had been convicted of a misdemeanor or were among the veniremembers with the highest number of driving infractions. However, the State was evasive about whether any white veniremembers ultimately seated on the jury had a misdemeanor criminal history and/or a worse driving record than the black veniremembers who were struck. The appellant sought to have the investigator's list reviewed to prove that the State's alleged reliance on the list was only a disguise for its racial discrimination in the removal of black veniremembers. The Alabama Supreme Court held that the appellant's request to review the document detailing the histories of the veniremembers should have been granted so that the appellant could have "an opportunity to prove that the seemingly facially neutral explanations offered by the State were a sham or pretext." Thomas, 601 So.2d at 58. However, the Alabama Supreme Court specifically stated:
 "We do not wish to be understood as holding that the trial court erred in this case by refusing to require the State to place into evidence the document that it used in exercising its peremptory challenges; neither do we intend this case to stand for the proposition that the State is now required to produce all notes, reports, or other documents that it uses in exercising its peremptory challenges."
Thomas, 601 So.2d at 58.
Unlike Thomas, there is no contention in the present case of disparate treatment of white and black veniremembers by the State. Here, the appellant did not argue that the State did not strike white veniremembers with arrest records. Under the circumstances presented in this case, we cannot say that the trial court's denial of appellant's Batson motion was clearly erroneous.
 II
The appellant contends that the trial court erred in admitting into evidence three photographs (City's exhibits one, two and three) because each photograph contained a handwritten *Page 515 
notation. The appellant concedes that the photographs themselves were not objectionable, but she argues that the comments written on the photographs related to the ultimate issue for the jury's determination in the trial — whether the appellant stole the items pictured in the photograph. The appellant also objects on appeal on the grounds that the author of the handwritten comments was not identified.
City's Exhibit 1 is a photograph showing several soft drink cans and a loaf of bread on a counter. At the bottom of the photograph is written: "Items she paid for with cash." C.R. 49. City's Exhibit 2 is a photograph of what appears to be a carton of cigarettes and a block of cheese. At the bottom of the photograph is written: "Didn't pay for these two items." C.R. 49. At the bottom of the photograph introduced as City's Exhibit 3 is the following notation: "Officer Coleman taking more cigarettes out of purse cheese." C.R. 50.
The security officer on duty at the A P grocery store at the time of the offense testified that he observed the appellant shopping in the store, and that he saw her take a carton of "More" cigarettes and a block of A P brand cheese and place them in her purse. The appellant left the store after purchasing 12 cans of soft drinks and a loaf of bread. The appellant was apprehended outside the store and Sergeant Coleman of the Dothan Police Department removed a carton of "More" cigarettes and block of cheese from the appellant's purse.
At trial, the photographs were properly authenticated and identified. The notation on each photograph was merely cumulative of the testimony of the security officer, which was properly admitted into evidence.
We hold that the admission of a photograph that contains extraneous writing that is testimonial in nature constitutes error. See Ex parte Johnson, 507 So.2d 1351, 1356-57 (Ala. 1986) (condemning the admission of a fingerprint card that contained information indicating prior criminal activity); Brown v.State, 369 So.2d 881, 884 (Ala.Cr.App. 1979) (same). Cf. Robbinsv. Kelson, 284 Ala. 645, 647, 227 So.2d 415, 417 (1969) (exhibit containing extraneous remarks including "not legal" was "incomprehensible" and was not sufficient to prove identity of heirs of decedent). The admission into evidence of photographs bearing on their backs explanatory "written endorsements," which were the writer's "mere conclusion[s]" based on the "surmise, opinion or conjecture[,] mayhap, suspicion, of the writer of the endorsement," has been held to constitute error. Anthony v. State, 30 Ala. App. 425, 428,7 So.2d 513, 516 (1942).
We further hold that such error may be harmless where the writing on the photograph is merely cumulative of the testimony of witnesses before the jury. See Rika v. State,587 So.2d 1054, 1060 (Ala.Cr.App. 1991) (error in sending to jury room medical records that had not been introduced into evidence and that contained extraneous "damaging information" was harmless where both the victim and the defendant testified to that damaging information); Maddox v. State, 520 So.2d 143, 154
(Ala.Cr.App. 1986) (harmless error for jury to consider typed transcript, which had not been introduced into evidence, of tape recording that had been played for jury); Merriweather v.State, 364 So.2d 374, 377 (Ala.Cr.App.), cert. denied,364 So.2d 377 (Ala. 1978) (harmless error to allow a diagram of the scene of the crime, which had not been admitted into evidence, to go to the jury where on the back of the diagram there was another drawing of a totally different robbery scene); Davis v.State, 54 Ala. App. 115, 120, 305 So.2d 390, 395 (1974) (no error in admission of photograph of a blackboard on which was written the stadium location of stolen football tickets). See also Massengale v. State, 548 P.2d 656, 658-59
(Okla.Cr.App. 1976) (erroneous admission of photographs containing writing on the backs was harmless where the writing "was at most cumulative to the testimony at trial"); DeLaine v.State, 230 So.2d 168, 172 (Fla.App. 1970), cert. quashed,262 So.2d 655 (Fla. 1972) ("[s]ince the prosecutrix took the stand and . . . identified the picture as being that of herself, . . . the word 'Victim' on the back of the picture [did not] inject reversible error into the record"). *Page 516 
The appellant did not object at trial to the failure of the City to identify the author of the handwritten statements on the photographs. Therefore, this ground asserted in appellant's brief is not properly before this Court for consideration. "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So.2d 880,882 (Ala. 1987).
We have examined the photographs and we find that the error in their admission was harmless and in no way prejudicial to the appellant.
 III
We reject the appellant's arguments that the City failed to prove the ownership and the value of the items allegedly taken.
At the time of the instant offense (August 28, 1991), theft of property in the third degree was defined as "[t]he theft of property which does not exceed $100.00 in value and which is not taken from the person of another or the theft of property which does not exceed $25.00 in value if taken from or in a building where said property is sold or stored." Ala. Code 1975, § 13A-8-5(a).[1] The City's complaint tracked the first alternative of this section. The Alabama Code defines theft of property as "[k]nowingly obtain[ing] or exert[ing] unauthorized control over the property of another, with intent to deprive the owner of his property. . . ." Ala. Code 1975, § 13A-8-2(1). Certainly, items such as cheese and cigarettes are included within the definition of "property" found in § 13A-8-1(10). " ' "In a [theft of property] prosecution the ownership of the alleged stolen property is properly laid in the person who is in the right possession thereof at the time of the theft." ' "Baker v. State, 574 So.2d 1018, 1022 (Ala.Cr.App. 1990) (emphasis added by Baker court). Obtaining or exerting unauthorized control over property is defined as "the taking, carrying away . . . or possession of, property. . . ." Ala. Code 1975, § 13A-8-1(7).
The appellant's defense was that the security officer "planted" the allegedly stolen items in her purse. She did not contest the A P's ownership of those items.
In this case, the City proved that the appellant was guilty of "shoplifting" one carton of "More" cigarettes and one block of A P cheese. The evidence, although circumstantial, was sufficient to establish that the appellant knowingly exerted unauthorized control over the cigarettes and cheese with the intent to deprive the A P of those items. Woods v. State,548 So.2d 611, 614 (Ala.Cr.App. 1989). Although there was no evidence of the value of the property taken (it was alleged to be $18.53 in the complaint (C.R.9)), the appellant could be convicted only of theft of property in the third degree, which encompasses the theft of property having a value less than $100.00. Ringstaff v. State, 480 So.2d 50, 51 (Ala.Cr.App. 1985) ("Because there was no evidence of the value of the [shoplifted] roast, the State failed to present a prima facie case of theft in the second degree. However, the evidence supports a finding that Ringstaff committed the misdemeanor offense of theft of property in the third degree.").
 IV
The appellant contends that the circuit court committed error by increasing the sentence she had received in the municipal court. The municipal court sentenced the appellant to "180 days in the City Jail, all suspended upon payment of fine and Court costs ($200.00 fine + $44.00 Court costs = $244.00) and lawful and proper behavior." C.R. 8. The circuit court sentenced the appellant "to hard labor for [the] City of Dothan for 180 days, which sentence is suspended on condition that defendant pay [a fine of $250 plus court costs] and complet[ion of] 30 days' community service." C.R. 2. *Page 517 
In sentencing the appellant, the trial court stated:
 "All right. The Court usually accepts the recommendation of the City in regard to sentencing [which was the same as the fine and sentence imposed in City Court]. In this case the Court is concerned that justice would not be served by just allowing the defendant just to go free with no substantial sanctions. This is a shoplifting case in which the jury failed to believe the defendant's testimony, and the Court certainly is concerned about this type of testimony coming into court and sharing with the Court a story that the security guard planted the items accused of shoplifting. With that, the Court sets punishment at a fine of $250 and cost of court and a sentence to hard labor for the City of Dothan for 180 days. And the Court is going to suspend that 180 days on the condition that you complete 30 days of community service. And the Court is going to give you a memorandum on community service to direct you to comply with that.
 "MS. LOGSDON: Judge, we would object to any increase in sentence absent a showing of further bad behavior as having a show and effect on her right to exercise her right to appeal.
 "THE COURT: The problem with deciding you want a trial and having brought out, you run the risk of the Court concluding that you came into this court and lied. And that's the conclusion that the Court has drawn. And that type of conduct is not to be tolerated. Now, the Court expects adults to be responsible for their behavior. And what I have heard was a tragedy of justice for someone to come in and concoct this type of story. And with that, you're lucky you're not spending six months in jail, hard time." R. 126-27.
On appeal de novo to circuit court, "the circuit court is free to set any lawful sentence upon conviction. [It] is not bound by the actions of the municipal or district judge in the same case. . . . Unless there is evidence in the record of 'vindictiveness' by the trial court, we will not overturn a higher sentence imposed on trial de novo that fits within the statutory limits of punishment." Draime v. State,523 So.2d 137, 139 (Ala.Cr.App. 1988). See also Gradford v. City ofHuntsville, 557 So.2d 1330, 1332-33 (Ala.Cr.App. 1989).
In the present case the court increased the appellant's sentence because the trial court was convinced that the appellant had lied on the witness stand — not because the appellant chose to exercise her right of appeal. The sentence does not reflect vindictiveness. Compare Richardson v. City ofTrussville, 492 So.2d 625, 628-29 (Ala.Cr.App. 1985) (vindictiveness clear where circuit court announced at docket call that a conviction on an appeal from municipal court would receive a longer sentence) with Steeley v. State,567 So.2d 398, 400-02 (Ala.Cr.App. 1989), cert. denied, 567 So.2d 403
(Ala. 1990), cert. denied, 498 U.S. 1091, 111 S.Ct. 974,112 L.Ed.2d 1059 (1991) (no finding of vindictiveness where circuit court made comments questioning the appellant's motives for appealing to the circuit court); Howell v. City of Birmingham,383 So.2d 567, 570 (Ala.Cr.App.), cert. denied, 383 So.2d 570
(Ala.), cert. denied, 449 U.S. 937, 101 S.Ct. 336,66 L.Ed.2d 160 (1980) (no finding of vindictiveness where circuit court increased appellant's municipal court sentence stating that pornographic film shown by the appellant was "terrible," "horrible," "nauseating," "almost made [him] regurgitate," and was "the filthiest film [he had] ever seen,"); Hardy v. State,455 So.2d 265, 268 (Ala.Cr.App. 1984) (no finding of vindictiveness where severe sentence handed down by the circuit court after appeal from district court did not hamper appellant's right to appeal and despite circuit court's comments to the effect that appellant deserved a more severe sentence for "tussling" with a police officer and attempting to take officer's loaded gun and that higher charges could have been brought but were not). "[U]nless there is evidence in the record of vindictiveness by the trial court, we will not overturn a higher sentence imposed on trial de novo that fits within the statutory limits of punishment." Briggs v. City ofHuntsville, 545 So.2d 167, 171 (Ala.Cr.App. 1988), cert. quashed, 545 So.2d 171 (Ala. 1989), overruled on other grounds,Frazier v. City of Montgomery, 565 So.2d 1255 *Page 518 
(Ala.Cr.App. 1990). Because there were two different sentencing judges, no presumption of vindictiveness applies. McCray v.State, 643 So.2d 610 (Ala.Cr.App. 1992).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Section 13A-8-5(a) was amended effective October 7, 1992, so that theft of property in the third degree is now defined as "the theft of property which does not exceed $250.00 in value and which is not taken from the person of another." Act No. 92-682, 1992 Ala. Acts 68. The version of the statute in effect at the time of the offense is applicable in this case. SeeBracewell v. State, 401 So.2d 123, 124 (Ala. 1979).