* The record contains various spellings of the appellant's name. "Carolyn Chron McElemore" is the spelling in the indictment.
The appellant, Carolyn Chron McElemore, appeals from her conviction of theft of property in the second degree, a violation of § 13A-8-4, Ala. Code 1975. She was sentenced to three years' imprisonment and placed on one year's probation. As a condition of that probation, she was ordered to pay all court costs within six months.
McElemore raises two issues on appeal. First, she argues that the trial court erred in allowing the state to improperly dismiss certain potential jurors in violation of Batson v.Kentucky.[1] Second, she argues that *Page 695 
the trial court erred in allowing the state to comment on a prior mistrial in McElemore's case and on pending civil litigation. However, because we find the Batson issue to be dispositive, we need not consider McElemore's second argument.
McElemore first contends that the trial court erred in allowing the state to improperly dismiss certain potential jurors in violation of Batson. Specifically, she argues that the state's practice of excluding potential jurors on the basis of their race effectively denied her of her guarantee of a fair trial.
In Ex parte Pressley, 770 So.2d 143 (Ala. 2000), the Supreme Court of Alabama summarized the rule under Batson:
 "A trial court's ruling on a Batson objection is entitled to great deference, and we will not reverse the trial court's Batson ruling unless it is clearly erroneous. Ex parte Branch, 526 So.2d 609 (Ala. 1987). In Batson, supra, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the prosecution from exercising its peremptory strikes to remove African-Americans from an African-American defendant's jury solely on the basis of their race. 476 U.S. at 93.
"In Batson, the United States Supreme Court held:
 "`Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried, . . . the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.'
"476 U.S. at 89 (citations omitted.)
 "The Court went on to outline the components of a defendant's prima facie case of racial discrimination:
 "`To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the [veniremembers] from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.'
"Batson, 476 U.S. at 96 (citations omitted).
 ". . . In Strauder v. West Virginia, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880), the Court held that racial discrimination in jury selection offends the Equal Protection Clause; however, it recognized that a defendant has no right to a jury composed in whole or in part of persons of his own race.
 "A defendant making a Batson challenge bears the burden of proving a prima facie case of purposeful or intentional discrimination and, in the absence of such proof, the prosecution is not required to state its reasons for its peremptory *Page 696 
challenges. Ex parte Branch, 526 So.2d 609 (Ala. 1987). Only when the defendant establishes facts and circumstances that raise an inference of discrimination must the State give its reasons for its peremptory strikes. Stokes v. State, 648 So.2d 1179, 1180 (Ala.Crim.App. 1994).
". . . .
 "In Ex parte Branch, 526 So.2d 609 (Ala. 1987), we stated that the following terms illustrate the kinds of evidence a party can use to raise an inference of racial or gender discrimination when seeking to establish a prima facie case:
"`. . . .
 "`6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or [a] similar manner. . . .'
"`. . . .
"526 So.2d at 622-23."
770 So.2d at 144-46.
Procedurally, the party alleging racial discrimination in the use of peremptory challenges bears the burden of establishing a prima facie case of discrimination. Ex parte Branch, 526 So.2d 609,622 (Ala. 1987). "`[I]t is important that the defendant come forward with facts, not just numbers alone, when asking the [trial] court to find a prima facie case'" of racial discrimination. Mitchell v. State, 579 So.2d 45, 48 (Ala.Cr.App. 1991), cert. denied, 596 So.2d 954 (Ala. 1992), quoting UnitedStates v. Moore, 895 F.2d 484, 485 (8th Cir. 1990). Once a prima facie case has been established, a presumption is created that the peremptory challenges were used to discriminate against black jurors. Id. at 623. Where the prosecutor is required to explain his peremptory strikes, he or she must offer "`a clear, specific, and legitimate reason for the challenge which relates to theparticular case to be tried, and which is nondiscriminatory. However, this showing need not rise to the level of a challenge for cause.'" McLeod v. State, 581 So.2d 1144, 1155 (Ala.Cr.App. 1990), quoting Branch, 526 So.2d at 623. (Emphasis in Branch; citation omitted.) Once the responding party has articulated a race-neutral reason or explanation for eliminating the challenged jurors, the moving party can offer evidence showing that the reason or explanation given is merely a sham or pretext. Branch, 526 So.2d at 624. When the trial court has followed this procedure, its determination will be overturned only if that determination is "clearly erroneous." Id. at 625.
 "In Clark v. State, 621 So.2d 309, 314 (Ala.Cr.App. 1992), this Court stated:
 "`While some of the reasons given by the prosecutor were clearly suspect, e.g., living in a high crime area, and subjective, e.g., making a poor impression during voir dire and failure to communicate, see Ex parte Bird, supra, the prosecutor also gave valid reasons for his strikes of the potential jurors for whom he had given the suspect or subjective reasons. See Davis v. State, 555 So.2d 309, 314 (Ala.Cr.App. 1989) (wherein the prosecutor gave a highly suspect reason, specifically age, for his strike [and] this court held that, "[w]e do not need to address whether this strike was a sham, however, since the prosecutor stated an additional ground for striking this venireman," which was held to be sufficiently race-neutral).'"
Della-Calce v. State, 654 So.2d 54, 56 (Ala.Cr.App. 1994).
Our review of the record indicates that at trial, McElemore alleged that the state had improperly dismissed eight African-American jurors. The trial court stated that it was satisfied that McElemore had *Page 697 
presented a prima facie case of discrimination, and it required the state to give its reasons for the strikes. (R. 64.) After the state responded, McElemore's counsel offered evidence from the voir dire to show that the prosecutor's reasons were pretextual. Based on the state's explanations and on McElemore's responses, the trial court determined that the state had not violated Batson.
Because McElemore challenges on appeal only the state's striking of potential jurors 270, 251, and 235,[2] on appeal, we limit our analysis to these particular challenges.
 A.
The state first responded that potential juror 270, when she was asked to introduce herself to the trial court, "was like very vocal." The state offered an additional reason, explaining "it's our opinion that the type of personality that it seems that this woman has that she would probably be greatly offended by the fact that the prosecutor did overlook her and did leave her out of asking [any additional] questions." (R. 64-65.) McElemore's counsel responded that there were several white jurors who also had not been asked any further questions and who were not dismissed by the state. In making its decision, the trial court stated:
 "While the record might not reflect the personality that [potential juror 270] . . . seemed to have, she did have an extremely effervescent personality when she stood and introduced herself. And I have no notes after that where she responded to nothing subsequent to that. Your next one."
(R. 68.)
This Court has held that a potential juror's demeanor may form the basis for a valid race-neutral strike. Hart v. State,612 So.2d 520, 524 (Ala.Cr.App.), aff'd, 612 So.2d 536 (Ala. 1992), cert. denied, 508 U.S. 953, 113 S.Ct. 2450, 124 L.Ed.2d 666
(1993). Moreover, although McElemore argued at trial that the state did not strike white jurors who had a similar demeanor, McElemore did not identify the jurors or offer any specific information from which the trial court could determine that the prosecutor's reason was either pretext or sham. Furthermore, the trial court observed the potential juror and noted on the record the change in potential juror 270's demeanor. Thus, based on the record before us, we cannot conclude that the trial court's determination with regard to the state's striking of juror 270 was clearly erroneous.
 B.
The state responded that potential juror 251 was dismissed because she said she used to work in retail sales in a store inside a mall and that she had never seen or had any experience with shoplifting. The prosecutor indicated that she found juror 251's response "doubtful." The state also indicated that this potential juror looked very young. (R. 72.) The record shows that the following colloquy occurred:
 "[Appellant's counsel]: Judge, for the record, that's no race-neutral reason based on the fact that I know there were several white jurors not struck that also responded to the sales-clerk question and who also said that they had not observed any shoplifting. Juror H.
"[Prosecutor 1]: No. Juror H. did observe it.
 "THE COURT [reading from its notes]: `Juror H., lots of shoplifting.' *Page 698 
 "[Appellant's counsel]: Juror H. said he had worked as a clerk. . . .
"[Prosecutor 1]: You struck him.
 "[Appellant's counsel]: Hold up. And [potential juror H.W.] who says — number 299, a white male juror, said that he had worked in retail as a cashier and had not observed any theft crimes. Number 299. I remember that specifically that he hadn't observed no crime.
"THE COURT: Anything else from the State?
 "[Prosecutor 2]: No, ma'am. I wanted to respond and say that [Juror H.W.] was —
 "[Prosecutor 1]: He mentioned, he said, `Well, I was a teenager when I worked there.' He said, `You know, I don't really know,' he said, `We were teenagers. We weren't paying attention or something to that effect.
"[Prosecutor 2]: He worked at Music Land.
"[Prosecutor 1]: He said they never caught anyone.
 "[Appellant's counsel]: For the record, like I said, most of the jurors that responded it had been several years since they had worked in retail, most of them that did respond.
 "THE COURT: Her age and no shoplifters, I'll allow juror [251] as a race-neutral reason."
(R. 73-74.)
Initially, we note that our review of the record indicates that potential juror 251 was not questioned about her age and that she unequivocally stated that she had been around retail thefts. (R. 22.) Potential juror 251 simply introduced herself and told the trial court where she lived and currently worked. (R. 12.) Later, the prosecutor asked those potential jurors who had worked in retail sales to identify themselves. When he recalled that potential juror number 251 had responded to this inquiry affirmatively, he asked her about her retail sales experience. She answered that she had previously worked at Royal Express in Western Hills Mall, near where the offense at issue had allegedly been committed. The prosecutor asked her if she had "an occasion to be around anybody involved in any suspected shopliftings or thefts?" Potential juror 251 answered, "Yes." The prosecutor then continued questioning other members of the venire. (R. 22.) He never asked potential juror 251 any other questions. Moreover, he never asked her age. When the trial court made the state explain its strikes, the state stated that it recalled that potential juror 251 had stated that she had had no previous experience with shoplifting. (R. 72.) The fact that the prosecutor exercised this strike based on a mistaken belief does not necessarily mean the reason is invalid.
"`A prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral.'" Reese v. City of Dothan, 642 So.2d 511
(Ala.Cr.App. 1993). "`[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within the trial judge's province."'" Hernandez v. New York, 500 U.S. 352,111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991)." 642 So.2d at 514. Therefore, this Court need review only whether the prosecutor's reasons are race neutral.
Based on the record before us, we cannot conclude that the prosecutor's assertion that age was the reason he struck juror 251 established a race-neutral reason.
 "This Court has recognized that `the age rationale is highly suspect because of its inherent susceptibility to abuse. Batson, 476 U.S. at 106, 106 S.Ct. at 1728 *Page 699 
(Marshall, J., concurring).' Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991). In fact, `[a] mere summary declaration that age was a factor in the decision to strike is, therefore, constitutionally deficient and warrants reversal. Owens v. State, 531 So.2d 22, 26 (Ala.Crim.App. 1987).' Bird, at 683. Despite its susceptibility to misuse, however, this Court has also noted:
 "`[W]e realize that in certain cases age may serve as a legitimate racially neutral reason for a peremptory strike. See Harrell, 555 So.2d at 268 n. 1.'
"Bird, at 682-83."
Ex parte Brown, 686 So.2d 409, 416-17 (Ala. 1996), cert. denied,520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
Moreover, in Slappy v. Florida, 503 So.2d 350
(Fla.Dist.Ct.App. 1987), the Florida District Court of Appeal recalled a similar California case:
 "In People v. Trevino, 39 Cal.3d 667, 217 Cal.Rptr. 652, 704 P.2d 719, (1985), the California Supreme Court again considered the question, this time in a case where the prosecutor had exercised its peremptory challenges to remove all six venirepersons with `Spanish surnames.' Finding a prima facie case of abuse of the peremptory challenge, the trial court ordered the prosecutor to give explanations. After listening to the reasons offered, the trial court denied Trevino's motion for a mistrial, stating:
 "`[The prosecutor] has sustained his burden of justification that the use of the peremptory challenges against these particular jurors was for specific reasons which he explained on the record; [n]ot that they were necessarily members of a certain ethnic group, but because of their particular age or sex, he excused them for those reasons and other specific reasons such as with one juror he mentioned the fact that he had a relative convicted of [a] similar offense or a crime. And these explanations seem to fall within the reasonable use of the peremptory challenges for bias or implied bias that counsel might want to use. For that reason the motion would be denied.'
 "Trevino, 39 Cal.3d at 688-89, 217 Cal.Rptr. at 663, 704 P.2d at 730.
 "The supreme court reversed, first noting that the trial court was apparently confusing `specific reason' with `specific bias.' The latter, a permissible basis for exclusion of a prospective juror, was defined in [People v.] Wheeler[, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748
(1978)] as `a bias relating to the particular case on trial or the parties or witnesses thereto.' Wheeler, 22 Cal.3d at 276, 148 Cal.Rptr. at 902, 583 P.2d at 760. Further, a review of the record demonstrated that the prosecutor had not, in fact, satisfied his burden of showing that he excluded the Spanish surnamed jurors on the grounds of specific bias.
 "Although the prosecutor had relied on age as the most compelling factor underlying his use of peremptory challenges — voicing a concern that the young jurors lacked maturity and might be the same age as the defendant — he made no effort to determine the jurors' ages on voir dire. Nor did he inquire into any age-based biases the jurors might harbor. Moreover, the prosecutor did not challenge another prospective juror whose surname was not Spanish even though he was about the same age as the defendant. The disparate treatment of members of the excluded group and the unchallenged jurors guided the supreme court's analysis." *Page 700 
503 So.2d at 354 (emphasis added.) The Alabama Supreme Court inBrown, the California court in Trevino, and the Florida court inSlappy found it significant that, although the state premised its dismissal of a juror on the basis of age, the prosecutor made no effort to question the potential juror about his age, and whether his age would influence his decision in the case.
The voir dire in the present case mirrors that in Trevino. Although the state premised its dismissal of potential juror 251, in part, on her young age, the record does not indicate that the prosecutor ever asked her age or asked whether her age would unduly influence her decision in this case. The record does not show why the prosecutor thought juror 251's age was an important factor to consider when selecting jurors for this particular case. While we recognize that McElemore did not allege that other potential similarly situated jurors were not struck for this reason, we cannot conclude that the prosecutor's bare assertion that age was a reason to strike potential juror 251 is alone a race-neutral, and therefore legitimate reason. Cf. Freeman v.State, 651 So.2d 576 (Ala.Cr.App. 1994).
Because potential juror 251's age does not provide an adequate race-neutral reason for the prosecutor's strike, we must now address the prosecutor's other reason offered for striking her — i.e., to her lack of experience after working in retail with shoplifters. See Della-Calce, supra. The prosecutor also provided this same reason in support of his strike of potential juror 235; therefore, we will address this reason as to both jurors.
 C.
The state responded that potential juror 235 had also answered that he had previously worked in two different stores doing retail sales but that he had never observed or heard of any incidents of shoplifting. (R. 74-75.) The prosecutor stated that after juror 235 had given that answer, he never afforded him much credibility. (R. 75.) McElemore's counsel again brought up the fact that similarly situated white potential jurors, like H.W., had not been struck. However, in finding the state's response to be race-neutral, the trial court noted that a distinction could be made in that the stores where the dismissed potential jurors had worked dealt in large retail items (similar to the store from which McElemore had allegedly shoplifted) and stated that it would consider this reason to be a race-neutral reason. (R. 75-76.)
This Court has never tolerated the strike of an African-American juror when a similarly situated Caucasian juror is allowed to remain seated on the jury. In Powell v. State, 608 So.2d 411
(Ala.Cr.App. 1992), we stated:
 "This Court has condemned the failure to strike white venirepersons who share the same characteristics as black venirepersons who were struck. See Carrick v. State, 580 So.2d 31 (Ala.Cr.App. 1990); Acres v. State, 548 So.2d 459
(Ala.Cr.App. 1987). See also State v. Butler, 731 S.W.2d 265
(Mo.App. 1987) (strike of black nurse held invalid when white venireperson employed by the American Nurses Association was not struck). In Carrick, 580 So.2d at 32, this court noted the following:
 "`In Powell v. State, 548 So.2d 590, 593
(Ala.Cr.App. 1988), this court took notice of what the Alabama Supreme Court observed in Ex parte Branch[, 526 So.2d 609 (Ala. 1987)]:
 "`"In Ex parte Branch, our Supreme Court observed:
 "`"`Once the prosecutor has articulated a nondiscriminatory reason *Page 701 
for challenging the black jurors, the other side can offer evidence showing that the reasons for explanations are merely a sham or pretext. [People v.] Wheeler, 22 Cal. 3d [258] at 282, 583 P.2d [748] at 763-64, 148 Cal.Rptr. [890] at 906 [1978]. Other than reasons that are obviously contrived, the following are illustrative of the types of evidence that can be used to show sham or pretext:
"`"`. . . .
 "`"`3. Disparate treatment — persons with the same or similar characteristics as the challenged juror were not struck. Slappy [v. State], 503 So.2d [350] at 354 [Fla.Dist.Ct.App. 1987]; [People v.] Turner, 42 Cal. 3d [711] at 725, 726 P.2d [102] at 110, 230 Cal.Rptr. [656] at 664 [1986]; Wheeler, 22 Cal.3d [at] 282, 283 [583] P.2d at 760, 148 Cal.Rptr. at 906.'"
 "`In the instant case, the State engaged in the type of disparate treatment denounced in Branch. See also Acres v. State, 548 So.2d 459
(Ala.Cr.App. 1987) (wherein this Court held that the validity of the prosecutor's reasons for striking two black venirepersons because they had had traffic citations did not "stand up under close scrutiny" when the record revealed that two white jurors who served on the jury had similar traffic offenses, at 473). Here, as in Acres, the State simply did not remove white persons for the same reasons given by the State for removing blacks.' (Some bracketed language original; some added.)
 "Because the state failed to strike a white venireperson who shared the same characteristic . . . as black venirepersons who were struck, it is arguable that the prosecution engaged in the type of disparate treatment denounced in Ex parte Branch, 526 So.2d 609 (Ala. 1987)."
608 So.2d at 413-14. For Batson purposes, the courts in the cases cited in Powell failed to acknowledge a legitimate distinction between nurses employed within the medical field and those employed by private collective associations. See State v. Butler,731 S.W.2d 265 (Mo.App. 1987). Additionally, this Court had previously declined to acknowledge a distinction between jurors of different races who had been issued similar traffic citations. See Acres v. State, 548 So.2d 459 (Ala.Cr.App. 1987). We likewise fail to see the distinction between employment in stores that sell large retail items and stores that sell small retail items. The voir dire conducted by the prosecutor indicates that the prosecutor doubted the credibility of potential jurors who had worked in retail but who had had no experience with loss prevention. The record does not indicate that the reason for differentiating included the sale of large versus small retail items. The record indicates that the prosecutor sought to exclude potential jurors who admitted working in retail but who did not have any experience with shoplifting. With that reason in mind, the record indicates that the prosecutor struck two African-American potential jurors while retaining a similarly situated Caucasian potential juror. We refuse to tolerate such a practice of trivial "fine-line drawing" between particular facets of the same industry in an effort to justify the state's reason for striking certain potential jurors unless an adequate distinction is developed during the voir dire.
The trial court erred in determining that the state produced clear, specific, legitimate, nondiscriminatory reasons for its challenges, which related to the specific circumstances of this particular case. See *Page 702 McLeod, supra, quoting Branch, supra. Because the trial court's decision was "clearly erroneous" in regard to the dismissals of certain potential jurors, we must reverse.
As previously stated, because the Batson issue is dispositive, we will not consider the other issues raised in this appeal. However, we caution that this opinion is not to be understood as indicating that the other issues have no merit.
Accordingly, we must reverse McElemore's conviction and remand this cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMillan and Cobb, JJ., concur; Long, P.J., and Baschab, J., concur in result only.
[1] 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[2] The record contains these potential jurors' names and numbers; however, with regard to certain potential jurors the record indicates only their names. In those instances, the juror is identified by initials.