GOVERNMENT OF THE VIRGIN ISLANDS

v.

ERNESTO CARMONA, Appellant

No. 17,600

United States Court of Appeals

Third Circuit

Argued September 19, 1969

Decided January 22, 1970

RONALD H. TONKIN, ESQ., Christiansted, St. Croix, Virgin Islands, *for appellant*

VINCENT A. COLIANNI, ESQ., Assistant U.S. Attorney, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before BIGGS, KALODNER and FREEDMAN, *Circuit Judges*

### OPINION OF THE COURT

BIGGS, *Circuit Judge*

This is an appeal by Ernesto Carmona from a conviction of first degree felony murder and a sentence of life imprisonment. The killing took place on the Island of Saint Croix in the Virgin Islands in the course of an alleged robbery. See Title 14, Virgin Islands Code, Section 922(a)(2).[1]

In the late afternoon of August 6, 1968, Carmona, Lydia Vasquez, Carmen Cruz and Carlos Hardouin left their common residence together by automobile. There followed an evening of drinking at several bars. Sometime shortly after midnight, the group arrived at a bar owned and operated by Mattias Delerme. After a period of further drinking, between two and three o'clock on the morning of August 7, these four were the only patrons remaining in the bar. Lydia Vasquez became ill and went outside to sit in the car. Later, Carmona and Carmen Cruz also came outside. Carmen Cruz got into and started the car while Carmona took a shotgun from the trunk and reentered the bar.[2] Carlos Hardouin testified that he and Carmona had resolved to rob Delerme. He further testified that Carmona, once back inside the bar, ordered Delerme not to move and shot and killed him when the latter tried to

---

[1] The statute is as follows:
 "(a) All murder which—
 "(1) is perpetrated by means of poison, lying in wait, torture or by any other kind of willful, deliberate and premeditated killing; or
 "(2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem—is murder in the first degree."

[2] Tr. 51, 53. There is a slight conflict in the evidence here. Home Guard Ernest Hodge who was standing in the vicinity of Delerme's bar at the time in question testified that he "saw three of them rush out of the bar, . . ." Tr. 27.

444

hide behind a refrigerator located behind the bar. Carmona fled the bar. Hardouin took some of the victim's money and followed.[3] When Carmona and Hardouin had rejoined the two girls, all four drove out into the country where Carmona disposed of the shotgun and a blood stained quilt. Carmona solicited the aid of his brother-in-law in helping him to escape from the island. Shortly thereafter the police arrested Carmona and the others.

Carmona has never denied that he perpetrated the killing. Indeed, his counsel virtually admitted that Carmona had shot Delerme by stating to the jury in his opening argument that ". . . after you hear all the evidence, I'm sure that the only question that you will have to decide is to [sic] what degree of homicide is Ernesto Carmona guilty of." The theory of Carmona's defense is that his intoxication created a reasonable doubt that he was capable of formulating the specific intent to commit robbery, and, consequently, that he could not properly be found guilty of first degree murder.

There is substantial though not overwhelming evidence to support Carmona's defense. Patrolman Denzel Christian testified that Carmona had "a smell of alcoholic beverage" about him approximately two hours before the shooting. Ernest Hodge, another policeman, reported seeing Carmona drinking less than an hour before the killing. Lydia Vasquez testified that Carmona had "a few drinks" at home the morning of August 6, that he had "a few drinks" at each of two bars during the evening of August 6, and that he had "a good bit" to drink at the victim's bar in the early morning hours of August 7

---

[3] Carlos Hardouin and Carmen Cruz were originally charged with first degree murder along with Carmona. An amended information, however, charged only Carmona. Prior to Carmona's trial, Hardouin had pleaded guilty to second degree murder and Cruz had pleaded guilty as an accessory after the fact.

directly prior to the shooting. Carlos Hardouin testified that Carmona had "a few beers" at the house and consumed more than 18 "gin drinks" over the course of the evening leading up to the shooting. On the other hand, none of these witnesses would state on the witness stand that Carmona had *behaved* in a drunken manner.

In urging that reversible error was committed by the court below, Carmona makes two contentions, both involving the charge to the jury. First, he argues that the instructions defining the elements of robbery and informing the jury of the materiality of the intoxication issue were inadequate and confusing. Second, Carmona contends that the trial court erred in not charging the jury that it might acquit Carmona of first degree murder but find him guilty of second degree murder or of voluntary manslaughter.

Carmona's counsel requested the following charge:

"You are instructed that in order to find the defendant guilty of murder in the first degree as charged you must find beyond a reasonable doubt that defendant shot and killed Mattias Delerme while in the act of perpetrating or attempting to perpetrate the crime of robbery. Robbery is defined as the unlawful taking of personal property in the possession of another, from his person or immediate presence and against his will, by means of force or fear. *In order for the defendant to commit the crime of robbery, the defendant must have formulated the specific intent to commit that crime.*

"The defendant has raised the defense that he was in a state of voluntary intoxication at the time the alleged homicide took place.

"You are instructed that an act committed while in a state of voluntary intoxication is no less criminal because committed while in such state. You are further instructed that you may take into consideration the fact

446

that the defendant was intoxicated at the time *in determining whether defendant had the specific intent to commit the crime of robbery. . . .*" (Italics added.)

Instead, the trial court charged: "Now robbery is the unlawful taking of personal property in the possession of another from his person or immediate presence and against his will by means of force or fear. Thus the elements of the crime which you must find in order to convict the defendant are, first, you must find a murder. That is, an unlawful killing of a human being. Second, you must find that the unlawful killing took place while there was a robbery in progress or attempt to commit robbery. . . .

"Now, as to intoxication. The law provides that no act committed while in a state of voluntary intoxication is less criminal because committed in such a state. However, you may take into account the fact that the accused may have been intoxicated at the time *in determining the purpose, motive or intent with which the act was committed. . . .*" (Italics added.)

The charge requested and the charge given are quite similar save in two respects. First, the requested charge expressly stated that there need be a finding of "specific intent" to commit robbery, whereas the charge given makes no reference to "specific intent". Second, the charge requested notes the relevance of intoxication evidence "in determining whether defendant had the specific intent to commit the crime of robbery." The charge actually given, however, did state that intoxication was relevant "in determining the purpose, motive or intent with which the act was commited."

In order to weigh the significance of these discrepancies, we must first resolve an issue of statutory construc-

tion.[4] Title 14, Virgin Islands Code, Section 1861 defines robbery as "the unlawful taking of personal property in the possession of another, from his person or immediate presence and against his will, by means of force or fear." The statutory definition contains no express element of "specific intent". Carmona cannot be heard to complain of the trial court's failure to charge on "specific intent" unless it be held that such an element is implicit in the statutory definition. This precise point is one of first impression, our research having failed to disclose any case construing Section 1861.

The Revision Notes to Section 1861 reveal that the section was derived with minor changes in phraseology from the 1921 Municipal Codes, Title IV, ch. 5, § 34, where robbery was defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence and against his will accomplished by means of force or fear." Both Section 1861 and the provisions of the 1921 Codes which it superseded are very similar to the common law formulation of the crime of robbery as "the felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear." IV Blackstone's Commentaries, ch. 17, § 241. Because of this similarity we conclude that Section 1861 is a restatement of the common law, and at common law robbery requires a specific intent to deprive permanently a rightful owner of his property.[5]

This conclusion finds support in our decision in United States v. Nedley, 255 F.2d 350 (3 Cir. 1958), where we held that the definition of robbery contained in the Hobbs

---

[4] This issue is not directly raised by either party, but, as will soon be apparent, its resolution is essential to the question of the adequacy of the jury charge.

[5] 2 Wharton, Criminal Law and Procedure §§ 545, 548 (1957).

Act, 18 U.S.C. § 1951, contained implicitly the common law element of specific intent to steal. Our decision in Nedley was based largely on the similarity of the statutory and common law definitions of the crime. We declared our refusal to accept the view that Congress intended "to scrap centuries-old concepts of the elements of a felony such as robbery." 255 F.2d 356–57. Neither can we ascribe such an intent to the draftsmen of the Virgin Islands Code. Cf. Morissette v. United States, 342 U.S. 246, 252, 260–62 (1952). See also Byrd v. United States, 342 F.2d 939, 940–41 (D.C. Cir. 1965).

With this issue resolved we can turn to an analysis of the trial court's charge.

██ Although the trial Judge is allowed a wide measure of discretion in shaping a particular charge, United States v. Meisch, 370 F.2d 768, 774 (3 Cir. 1966), a misleading instruction is reversible error. "A conviction ought not rest on an equivocal direction to the jury on a basic issue." Bollenbach v. United States, 326 U.S. 607, 613 (1946). It is also long settled that an instruction must fairly set forth all of the essential elements of the crime charged. United States v. Pincourt, 159 F.2d 917, 920 (3 Cir. 1947).

██ As measured by these principles, the jury charge in the case at bar was fatally deficient. Carmona was charged with first degree felony murder. The felony alleged was robbery, and, as we have shown, one of the essential elements of robbery is a specific intent to steal. But the trial Judge did not inform the jury of this element. There was a somewhat oblique reference to "intent" in the intoxication charge for the jury was told to consider intoxication "in determining the purpose, motive or intent with which the act was committed," but this cannot be deemed to suffice as a specific intent charge. What, for example, is meant by "the act"? This term could have been inter-

preted readily by the jury to refer to the act of the shooting rather than to the acts of taking or planning to take the victim's money.

██ ██ The Government correctly notes that the trial court's instruction as to robbery was a verbatim recitation of the Virgin Islands robbery statute, and when the terms of a statute are "simple and self-explanatory" its verbatim recitation is sufficient. United States v. Malfi, 264 F.2d 147, 151 (3 Cir.), cert. den., 361 U.S. 817 (1959). But the terms of this robbery statute are not self-explanatory. A jury composed of laymen could very well have found an "unlawful taking of personal property" merely by reasoning that Carmona took Delerme's property without permission. But robbery is more than simple conversion. The express terms of the statute do not alert the jury as to the necessity of a finding of a specific intent to steal. See Byrd v. United States, supra. Such being the case, the mere recitation of the robbery statute in the jury charge was inadequate and reversible error.[6]

██ Carmona's second contention is that he was wrongfully denied his right to have the jury consider the possibility of his guilt of the lesser crimes of second degree murder and voluntary manslaughter. The source of this claim is Rule 31(c), Fed. R. Crim. Proc., 18 U.S.C.,

---

[6] For these same reasons we must also agree with Carmona's contention that the portion of the charge relating to intoxication did not adequately explain the materiality of the intoxication evidence.

The Government argues that the evidence of intoxication was insufficient to require any intoxication charge whatsoever. In so arguing the Government points out that none of the witnesses who had observed Carmona would state the he was drunk and that Carmona had the mental capacity to plan and commit the crime and, afterwards, to hide the murder weapon and plan his escape from the island. Nevertheless we cannot disregard the testimony that Carmona had a great deal to drink prior to the shooting. As long as there is an evidentiary foundation in the record sufficient for the jury to entertain a reasonable doubt, a defendant is entitled to an instruction on his theory of the case. See, e.g., Charron v. United States, 412 F.2d 657, 660 (9 Cir. 1969); United States v. Fellabaum, 408 F.2d 220, 227 (7 Cir. 1969); Sparrow v. United States, 402 F.2d 826, 828 (10 Cir. 1968). We think there was an adequate evidentiary foundation here.

which provides that a "defendant may be found guilty of an offence necessarily included in the offence charged or of an attempt to commit the offense charged or an offence necessarily included therein if the attempt is an offence." Although the language of the Rule is permissive, it appears settled that a "lesser included offence" charge is a matter of right if the conditions set forth in the Rule are satisfied. Sansone v. United States, 380 U.S. 343, 349 (1965); Berra v. United States, 351 U.S. 131, 134 (1956); Stevenson v. United States, 162 U.S. 313 (1896). These conditions as judicially expounded are twofold. First, the lesser included offence must be comprised solely of some but not all of the elements of the offence charged. Second, there must be a genuine conflict of evidence as to an element of the offence charged, which element is not shared by the lesser included offence. See Sansone, supra, at 349–50.

 We are satisfied that the foregoing conditions are fulfilled in the instant case and conclude that the refusal of the learned trial Judge to instruct the jury on second degree murder was reversible error. Title 14, Virgin Islands Code, Section 921 defines "murder" as "the unlawful killing of a human being with malice aforethought." Section 922(a) of that title sets out two categories of first degree murder. Murder "committed by means of poison, lying in wait, torture or by any other kind of willful, deliberate and premeditated killing" is first degree murder. Secondly, "murder" committed in the perpetration or attempt to perpetrate certain enumerated felonies, including robbery, is first degree murder. Finally, Section 922(b) provides that "[a]ll other kinds of murder are murder in the second degree." According to these statutory provisions, there is "necessarily included" in any first degree murder an unlawful killing with malice aforethought, i.e., a second degree murder. Cf. Goodall

v. United States, 180 F.2d 397, 400 (D.C. Cir.), cert. den., 339 U.S. 987 (1950). Furthermore, there was a genuine issue of fact as to Carmona's capacity to formulate the specific intent to commit robbery. The jury, if properly instructed, could have harbored a reasonable doubt as to intent, precluding a conviction of first degree murder, while at the same time finding beyond a reasonable doubt that he had unlawfully killed Delerme with malice aforethought.

■■ The Government argues that if Carmona was so inebriated as to be incapable of formulating a specific intent to commit robbery, he could not have acted with malice aforethought. But this is not necessarily so. The concept of malice aforethought in the Virgin Islands murder statute is "not synonymous with premeditation" but "may also be inferred from circumstances which show a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences." Government of the Virgin Islands v. Lake, 5 V.I. 594, 362 F.2d 770, 774 (3 Cir. 1966). It is entirely possible that Carmona possessed the capacity for wantonness but not for the specific intent to commit robbery.[7]

■■ Caromona also complains of the omission of a voluntary manslaughter charge. But we can perceive no error here. Title 14, Virgin Islands Code, Section 924(1) defines voluntary manslaughter as the unlawful killing of a human being without malice aforethought "upon a sudden quarrel or heat of passion." It appears, therefore, the voluntary manslaughter is not "necessarily included" in

---

[7] The Government further contends that second degree murder is not "necessarily included" in a felony murder by arguing that a felony murder could be committed *without* malice aforethought. In support of this argument we are cited to the hypothetical case where a pistol is accidently discharged in the course of a robbery. But this would not be murder without malice aforethought. In such a case, "malice" would be inferred from the commission of the felony. See generally 1 Wharton, Criminal Law and Procedure § 251 (1957).

felony murder, since felony murder does not necessarily entail a sudden quarrel or heat of passion. Furthermore, even assuming that voluntary manslaughter is a necessarily included offence,[8] there was no error in failing to charge as to voluntary manslaughter in the circumstances of the instant case. As there was no evidence of a quarrel or fit of passion, the jury could not have correctly found Carmona guilty of voluntary manslaughter.[9]

Because of these errors in the charge to the jury the judgment of conviction will be reversed and the case will be remanded for proceedings consistent with this opinion.

---

[8] Cf. Stevenson v. United States, 162 U.S. 313, 315 (1896); Irby v. United States, 246 F.2d 706 (D.C. Cir. 1957) (per curiam).

[9] See Stevenson, supra, at 315.