The appellant, Mike Shannon Ashley, was convicted of murder made capital because the murder occurred during a burglary. § 13A-5-40(a)(4), Code of Alabama 1975. The jury, by a vote of 10 to 2, recommended the death penalty. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
Because we reverse the judgment in this cause, we will address only those issues that may be raised in any subsequent proceedings.
 I
The appellant argues that the trial court erred in failing to charge the jury on intoxication and manslaughter. This issue was preserved for our consideration. Counsel submitted written requested charges on intoxication and manslaughter. The trial court refused to give these instructions.
Recently, Judge Bowen, in Fletcher v. State, 621 So.2d 1010
(Ala.Cr.App. 1993), addressed the question of when an instruction on intoxication should be given. Judge Bowen stated:
 "A charge on intoxication should be given if ' "there is an evidentiary foundation in the record sufficient for the jury to entertain a reasonable doubt" ' on the element of intent. Coon v. State, 494 So.2d 184, 187 (Ala.Cr.App. 1986) (quoting Government of the Virgin Islands v. Carmona, 422 F.2d 95, 99 n. 6 (3d Cir. 1970)). See also People v. Perry, [61 N.Y.2d 849] *Page 1098 473 N.Y.S.2d 966, 966-67 [462 N.E.2d 143, 143-44] (N.Y.App. 1984) ('[a] charge on intoxication should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis'). An accused is entitled to have the jury consider the issue of his intoxication where the evidence of intoxication is conflicting, Owen v. State, 611 So.2d 1126, 1128 (Ala.Cr.App. 1992); Crosslin v. State, 446 So.2d 675, 682
(Ala.Cr.App. 1983), where the defendant denies the commission of the crime, Coon v. State, 494 So.2d at 187; see Moran v. State, 34 Ala. App. 238, 240, 39 So.2d 419, 421, cert. denied, 252 Ala. 60, 39 So.2d 421 (1949), and where the evidence of intoxication is offered by the State, see Owen v. State, 611 So.2d at 1127-28.
 ". . . In reversing two separate capital convictions where the trial court refused to instruct the jury on the lesser included offense of manslaughter, this Court has stated:
 " 'No matter how strongly the facts may suggest that appellant was not so intoxicated at the time he committed the offense that he was incapable of forming the necessary specific intent, the jury should have been instructed on manslaughter as a lesser included offense since there was a "reasonable theory from the evidence which would support the position." '
 "Crosslin v. State, 446 So.2d 675, 682
(Ala.Cr.App. 1983) (capital offense of murder of two persons in a single transaction); applied in McNeill v. State, 496 So.2d 108, 109 (Ala.Cr.App. 1986) (capital offense of murder during a robbery)."
621 So.2d at 1019-20. This court in Fletcher found that the trial court's failure to sua sponte instruct the jury on intoxication amounted to plain error, a finding that is inapplicable to this case because the failure to charge on this issue was specifically preserved for our consideration.
Here, the state's evidence tended to show that the victim, Mike Johnson, was stabbed with a butcher knife, as he slept with Maryland Jackson, the appellant's ex-girlfriend. Maryland Jackson testified that she had seen the appellant at a bar approximately two hours before the stabbing and that he "looked like he was out of it" and "looked like he was on drugs." She further stated that during the six years that they had dated, she had seen him intoxicated on other occasions. Another state's witness, James Long, testified that the appellant looked "high" the evening of the stabbing.
 "We recognize that '[t]he degree of intoxication necessary to negate specific intent . . . must amount to insanity.' Ex parte Bankhead, 585 So.2d 112, 121 (Ala. 1991). However, it is clear that where there is evidence of intoxication, the extent to which the accused is intoxicated is a question to be decided by the jury. Crosslin v. State, 446 So.2d 675, 682 (Ala.Cr.App. 1983). See Ex parte Bankhead, 585 So.2d at 121; Chatham v. State, 92 Ala. [47] at 49, 9 So. [607] at 608 [(1891)]; Owen v. State, 611 So.2d at 1128; Anderson v. State, 507 So.2d 580, 584 (Ala.Cr.App. 1987). In determining that the appellant 'was [not] so intoxicated that he didn't know what he was doing,' the trial court in the instant case 'invaded the exclusive province of the jury.' Owen v. State, 611 So.2d at 1128."
Fletcher, 621 So.2d at 1021.
The state contends that no matter what evidence was presented that tended to show that the appellant was intoxicated, there was nothing to show that he was so intoxicated that he lacked the specific intent to commit the burglary-murder. However, this court has stated:
 "In order to determine whether the evidence is sufficient to necessitate an instruction and allow the jury to consider the defense, 'we must accept the testimony most favorably to the defendant.' . . . United States v. Lewis, 592 F.2d 1282, 1286
(5th Cir. 1979). The Alabama Supreme Court has indicated that proper written requested instructions must be given 'which are supported by any evidence, however weak, insufficient, or doubtful in credibility.' Chavers v. State, 361 So.2d 1106, 1107 (Ala. 1978)."
Coon v. State, 494 So.2d 184, 186 (Ala.Cr.App. 1986). See also Annot., Modern Status *Page 1099 of the Rules as to Voluntary Intoxication as Defense toCriminal Charge 8 A.L.R.3d 1236 (1966).
By finding that the evidence did not support an instruction on intoxication or the lesser included offense of manslaughter, the court made a finding of fact. Findings of fact are within the exclusive province of the jury. This court has on many previous occasions reversed a conviction when the court failed to instruct the jury on intoxication. Brown v. State,627 So.2d 1112 (Ala.Cr.App. 1993); Owen v. State, 611 So.2d 1126
(Ala.Cr.App. 1992); Bridges v. State, 504 So.2d 1223
(Ala.Cr.App. 1987); McNeill v. State, 496 So.2d 108
(Ala.Cr.App. 1986); Coon, supra; Silvey v. State, 485 So.2d 790
(Ala.Cr.App. 1986).
Likewise, the court committed reversible error in failing to instruct the jury on manslaughter. " 'When the crime charged involves a specific intent, such as murder, and there is evidence of intoxication, the trial judge should instruct the jury on the lesser included offense of manslaughter.' Gray v.State, 482 So.2d 1318, 1319 (Ala.Cr.App. 1985)." McNeill, 496 So.2d at 109.
 II
The appellant also contends that the court erred in denying his motion based on Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The United States Supreme Court inBatson held that the Equal Protection Clause of the United States Constitution prohibits the removal of blacks from a black's defendant's jury solely on the basis of their race. This ruling was later extended by the United States Supreme Court to white defendants. Powers v. Ohio, 499 U.S. 400,111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The ruling in Batson was also extended to civil litigants in Edmondson v. LeesvilleConcrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660
(1991). The jury selection standards in Batson also have been applied to defense counsel. Georgia v. McCollum, ___ U.S. ___,112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); Lemley v. State,599 So.2d 64 (Ala.Cr.App. 1992). The Alabama Supreme Court also held that the protections of Batson also apply to the striking of white prospective jurors. White Consolidated Industries,Inc. v. American Liberty Insurance Co., 617 So.2d 657 (Ala. 1993). See also Williams v. State, 634 So.2d 1034 (Ala.Cr.App. 1993). Recently, the United States Supreme Court held thatBatson extends to gender-based strikes. J.E.B. v. Alabama, ___ U.S. ___, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
The record reflects that the state struck three black prospective jurors, leaving one to serve on the jury. Here, the strike list shows that the last strike for the state was of a black female prospective juror. As provided in Rule 18.4(g)(3), A.R.Crim.P., "The last person or persons struck shall be the alternate or alternates. . . ." Thus, the trial court should view the alternate jurors as having been struck for purposes ofBatson and this court must "evaluate the State's explanation for striking [the alternate]." Ex parte Bankhead,625 So.2d 1146, 1147 (Ala. 1993). Here, the trial court found a prima facie case of discrimination as to the striking of only one of the prospective jurors. The court stated: "I find they made a prima facie case as to J.B. since he never answered any questions or anything whatsoever."
The prosecutor stated that its reason for striking J.B. was that he had a prior criminal conviction and that the commander of the narcotics bureau for the Dothan Police Department told him that he knew this prospective juror to "deal with drugs." There was great confusion in the record as to whether this prospective juror was in fact the J.B. who had a prior criminal record .
Further, strikes based on information from sources that are not available to the other party have presented problems for this court and the Alabama Supreme Court.
 "This court recently in Walker v. State, 611 So.2d 1133 (Ala.Cr.App. 1992), and the Alabama Supreme Court in Ex parte Thomas, 601 So.2d 56
(Ala. 1992), faced similar issues. As Judge Patterson, writing for the majority, stated in Walker:
 " 'This strike was based partly on information provided by law enforcement officers that her husband sold and used drugs and that he stole in order to buy *Page 1100 
drugs. While these may be valid race-neutral reasons, see [Ex parte] Lynn, 543 So.2d [709] at 709 [(Ala. 1988), cert. denied, 493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989)], they are not susceptible to the same kind of proof as a strike based on an arrest, prosecution, or conviction, and may under some circumstances be suspect because, [not] being susceptible to the same kind of proof, they could be easily abused. . . . A simple question to this veniremember or to the panel as a whole . . . could have alleviated any suspicions.'
Walker, 611 So.2d at 1142-43. (Emphasis supplied [inWilliams].)
"The reason given by the prosecutor for striking prospective juror number 24 was accepted at face value and was 'based exclusively on information not in any way verifiable on the record before us.' No further questions were asked of the prosecutor concerning this reason. We are compelled to remand this cause for a new trial. Walker, 611 So.2d at 1143. As the Alabama Supreme Court stated in Thomas:
 " 'Extremely significant in this case, and at the heart of the reason this case must be reversed, is the trial court's accepting at face value the State's ostensibly facially neutral explanations for the use of its peremptory challenges, which were, with regard to three of the black veniremembers who were struck, based exclusively on information contained in the document to which only the state had access. If there was in this case voir dire testimony substantiating the State's explanations for the use of its peremptory challenges, e.g., if the State had engaged the veniremembers in voir dire questions concerning the veniremembers' misdemeanor criminal histories and/or their driving records, or if the trial court had ordered the State to produce the document that it used in exercising its peremptory challenges, or if the trial court had examined the document in camera, we might be in a position to affirm, rather that being compelled, as we are, to reverse and remand.'
 "Thomas, 601 So.2d at 58-9. (See King v. State, 612 So.2d 1333 (Ala.Cr.App. 1992), holding that no violation of Thomas occurred because the court, when ruling on the Batson motion, reviewed the documents that the state relied upon in striking the prospective juror.) In Jones v. State, 611 So.2d 466 (Ala.Cr.App. 1992), this court recently distinguished Walker and upheld the prosecutor's reason for striking a prospective juror because 'the sheriff's department had "drug problems" with that person.' 611 So.2d at 468. The circumstances and reason given in this case for striking juror 24 fall far short of those in Jones.
 "If an in camera hearing concerning this 'reason' had been held, further information might have come to light that would support the reason given for the strike as race-neutral. This was done in King, above.
 "There was little voir dire of the prospective juror. No questions were asked of the prospective juror that would shed light on the ambiguous information the prosecutor stated he obtained from the police. This is another procedure that might have produced better information. The Alabama Supreme Court, in a recent case, stated: 'The failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination.' Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991)."
Williams v. State, 620 So.2d 82, 85-86 (Ala.Cr.App. 1992).
The court could have eliminated the confusion in regard to the striking of J.B. if the court had called the juror back to the courtroom and questioned him about the information obtained by the prosecution.
The reason for striking prospective juror D.J. does appear in the record. The prosecution stated that this juror was struck because she had a brother who was prosecuted. This reason has been found to be nonviolative of Batson. Powell v. State,548 So.2d 590 (Ala.Cr.App. 1988), aff'd, 548 So.2d 605 (Ala. 1989). *Page 1101 
One of the alternate jurors was ultimately dismissed before deliberations. The record contains no reference to the striking of this juror and no reason was given for the strike of this juror. The state argues that there was no objection to the striking of this prospective juror, and the plain error rule does not apply. The Alabama Supreme Court has held otherwise.
 "Here, the trial court could not properly determine whether the prosecution's striking of Juror No. 48 was motivated by racial bias; no reason was given. We note that Jackson did not object to the prosecution's failure to articulate its reason for striking Juror No. 48; however, the omission constitutes 'plain error.' See Rule 45A and Rule 39(k), Ala.R.App.P. The removal of even one juror for a racially discriminatory reason is a violation of the equal protection rights of both the excluded juror and the minority defendant. Ex parte Bird, 594 So.2d 676 (Ala. 1991)."
Ex parte Jackson, 640 So.2d 1050, 1051 (Ala. 1993). Based on the record before us, we are compelled to conclude that the prosecution failed to rebut the prima facie case of discrimination. Jackson.
 III
The appellant further contends that the court erred in finding that the circumstances surrounding the murder were "especially heinous, atrocious, or cruel" when compared to other capital offenses. The state's evidence tended to show that the victim was stabbed in the chest as he slept. The victim jumped out of bed and was stabbed again in the back. He died shortly thereafter.
Initially, we note that the jury, when voting for the death penalty, returned a verdict form that listed two aggravating circumstances. The verdict form reads:
 "1. Murder was committed during the commission of a burglary.
 "2. Continued cruel pitiless attack on a defenseless victim."
We observe that this last circumstance found to exist by the jury does not fully comport with any statutory aggravating circumstances listed in § 13A-5-49, Code of Alabama 1975.
Further, after examining other capital cases in which the courts have upheld the application of the aggravating circumstance of "especially heinous, atrocious, or cruel," we find that that aggravating circumstance would not be applicable in this case.
In Ex parte McGahee, 632 So.2d 981 (Ala. 1993), the Alabama Supreme Court, upholding the aggravating circumstance of "especially heinous, atrocious, or cruel," commented on the facts surrounding the case. "McGahee shot [one victim] five times and shot, strangled, beat, and kicked [another victim] while she pleaded for her life. A pathologist testified that [one victim] sustained injuries similar to those associated with being run over by an automobile." McGahee, 632 So.2d at 983.
In McNair v. State, 653 So.2d 320 (Ala.Cr.App. 1992), after remand, 653 So.2d 343 (Ala.Cr.App.), after remand,653 So.2d 347 (Ala.Cr.App. 1993), after remand, 653 So.2d 351
(Ala.Cr.App. 1994), this court upheld the application of the above aggravating circumstance. The facts of the crime inMcNair were as follows:
 " 'At trial the forensic pathologist testified that the killing of [the victim] took place over several minutes by two methods. The slides and photographs as well as the testimony of the pathologist indicated a large number of cuts, nicks, abrasions, and bruises upon the upper part of the victim's body, indicating a protracted struggle and numerous blows to her upper body and head. [The victim's] death was actually caused by two deep knife cuts to her throat and loss of blood therefrom but also by strangulation. The testimony included a description of the crushing of the inner body structure of her throat and windpipe rising from severe pressure to the neck.
 " 'The nature of the wounds and the treatment of her body as evidenced by the bruises and cuts would indicate that [the victim] would have had to have suffered severe pain over several minutes while she *Page 1102 
was being attacked and dying. Such treatment of the victim would be considered consciousless, pitiless, and unnecessarily torturous to her.' "
McNair, 653 So.2d at 348-49, quoting from trial court's findings. See also Henderson v. State, 583 So.2d 276, 300
(Ala.Cr.App. 1990), aff'd, 583 So.2d 305 (Ala. 1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992).
Furthermore, "[I]n Ex parte Kyzer, 399 So.2d 330 (Ala. 1981), [the Alabama Supreme Court] adopted a limiting construction that restricts this aggravating circumstance to homicides that are 'unnecessarily torturous to the victim.' Ex parte Kyzer, at 334." McGahee, 632 So.2d at 983. All murders are, to an extent, "heinous, atrocious, or cruel." However, this aggravating circumstance is limited to those instances which are "unnecessarily torturous" as compared to other capital murders. § 13A-5-49, Code of Alabama 1975.
 IV
The appellant further contends that the prosecution committed reversible error in its closing arguments in the guilt phase. We have examined the comment and we conclude that the jury may have viewed the comment as a comment on the accused's failure to testify. Ex parte Windsor, [Ms. 1930048, February 18, 1994] ___ So.2d ___ (Ala. 1994). We caution the prosecution against such comments in any future proceedings.
 V
The appellant further contends that the court erred in its instructions on reasonable doubt. We direct the court's attention to the recently released United States Supreme Court case of Victor v. Nebraska, ___ U.S. ___, 114 S.Ct. 1239,127 L.Ed.2d 583 (1994), in which the reasonable doubt instruction was reexamined after the United States Supreme Court's decision in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328,112 L.Ed.2d 339 (1990).
For the reasons stated above, the judgment in this cause is reversed and the cause remanded to the Circuit Court for Houston County for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.