**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**CHRIS CARTY, Defendant**

Criminal No. F35/2007

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

August 12, 2008

BRENDA C. SCALES, ESQ., Assistant Attorney General, Virgin Islands
Department of Justice, St. Thomas, USVI, *For the Plaintiff.*

JULIE S. TODMAN, ESQ., Territorial Public Defender, Office of the Territorial Public Defender, St. Thomas, USVI, *For the Defendant.*

HOLLAR, *Judge*

## MEMORANDUM OPINION

(August 12, 2008)

### I. INTRODUCTION

This matter is before the Court on the People's Supplement to Evidentiary Hearing filed September 5, 2007, to admit the Defendant's Prior Bad Acts and Convictions during their case in chief in the murder trial of Glen Blyden as set forth at FED. R. EVID. 404(b). The Defendant submitted his Opposition to the People's Motion on December 10, 2007. For reasons that follow, the People's motion is denied in part and granted in part.

### II. PROCEDURAL POSTURE

The People initially submitted a Motion to Consolidate the murder trial of Glen Blyden, Crim. No. ST-07-CR-0000036 with the trial of the assault on Errol Stuart, Crim. No. ST-07-CR0000035, however the People subsequently withdrew their Motion and requested to proceed with the murder trial. At a hearing held on August 27, 2007, the People expressed their intention to use the Defendant's prior bad acts, to wit: the assault on Errol Stuart ("Stuart"), during the murder trial, to establish *inter alia* the Defendant's *modus operandi*. An oral motion was filed by the People requesting permission to submit an additional brief citing authority for the proper admittance of the evidence along with specific information as to how the People intend to use the evidence at trial. The Court advised the People to be specific as to why, what and how they propose to use the bad acts and convictions under FED. R. EVID. 404(b). In compliance with the Court's Order, the People submitted a Supplement to the Evidentiary Hearing on September 5, 2007. The defense then responded on December 11, 2007, by submitting an Opposition to the People's Supplement to the Evidentiary Hearing.

### III. FACTUAL SCENARIO

On January, 28, 2007, Errol Stuart was working at the Ital Irie Vegetarian Food Stand van across from Lionel Robert's Stadium in the

38

vicinity of Hospital Ground, St. Thomas, U.S. Virgin Islands. Stuart was preparing food for sale when he noticed the Defendant, Carty, pacing back and forth in front of the van. Stuart knew Carty for a number of years as they had gone to school together. Before the clash on January 28, 2007 Stuart and Carty had had a peaceful relationship and had not engaged in any previous altercations. Carty, who had been drinking and smoking marijuana earlier that day, had come to the food van to buy some "funta[1]". Carty came into the food van, which was an area restricted to customers, and asked Stuart for the funta. Stuart who described Carty's eyes as looking as if they were about to pop out of his head, refused to sell him any and asked Carty to leave the van. Stuart attempted to get Carty to leave by kicking him, but missed and fell back against the counter.[2] Carty then stabbed Stuart in the left eye with a pair of scissors. After being stabbed, Stuart regained his bearings and kicked Carty, who then ran. Stuart ran out of the van behind of Carty. Detective Albion George, of the Criminal Investigations Bureau, of the Virgin Islands Police Department received notice of the altercation at approximately 4:20 p.m. and arrived at the scene at approximately 4:30 p.m. Upon Detective George's arrival he encountered Stuart who was bleeding from his left eye. Stuart told Detective George that Carty was his assailant.[3] Detective George and others called an ambulance to pick Stuart up, but it did not arrive immediately. Fearing that Stuart would bleed to death if there was a longer delay in the ambulance's arrival, one of Stuart's friends drove him to the hospital where he arrived at 4:55 p.m.

On the same day, January, 28, 2007, moments after he ran from the Vegetarian Food Stand Van, at approximately 3:50 p.m.-4:00 p.m., Defendant Chris Carty arrived at "Jah Yard," in the vicinity of Hospital Ground (about 2 blocks away from Ital Irie Vegetarian Food Stand), silently walking around, shirtless, sweaty, and agitated. Alarmed by the Defendant's behavior, bystanders in Jah Yard (including Glen Blyden) inquired whether there was anything wrong with him. The Defendant

---

[1] Tobacco leaves used to make marijuana cigarettes.

[2] There are conflicting accounts about whether Carty was reaching for something in his pocket when he came into the van, prompting Stuart to kick Carty first, or if Stuart kicked Carty first without any provocation causing Carty to defend himself with a knife.

[3] A few days after the stabbing, Stuart identified Carty out of a photo array, as the person who stabbed him in his eye.

turned to Blyden, who was playing dominoes with four (4) other males, and asked Blyden if "he wanted something with him." As Blyden rose to face Carty, the Defendant gave Blyden a blow to the mouth, which Blyden returned. During the fight, Carty took out what witnesses described as a brown handled knife with a blade approximately eight to nine (8-9) inches long from his front right pocket and used it to stab Blyden in his throat. Despite being stabbed, Blyden continued fighting, getting the upper hand by striking Carty on the head with a rock. Bystanders then overcame Carty and subdued him, forcing him to drop the knife. After the bystanders parted the fight, Blyden walked to the street and collapsed. He was then placed in a van and driven to the Roy Lester Schneider Hospital where he arrived at 4:15 p.m. He was later pronounced dead at approximately 5:05 p.m. as a result of a stab wound to the neck and cardio-respiratory arrest.

Detective George, who was in the area, investigating the assault of Errol Stuart, observed the Defendant coming from the vicinity of "Jah Yard". Carty had no shirt on and was bleeding from the head. Detective George, along with other officers, tried to subdue the Defendant but the Defendant was hostile, resistant, and uncontrollable. After the Defendant was successfully restrained, he was taken to the hospital to receive treatment for his head injury. Because the Defendant was in such an irrational state and required medical care, Detective George declined to arrest him at that time.

The next day, on January 29, 2007, at approximately 12:00 noon, Detective George informed the Defendant of his rights, regarding the assault against Stuart. The Defendant gave Detective George a statement admitting that he had stabbed Stuart in the eye, but maintained that the act had been done in self defense. Carty also contended that he then went to "Jah Yard", where he was "jumped" by a couple of men. Carty did not admit to stabbing Blyden. After the Defendant gave Detective George the statement, Detective George placed him under arrest for the first degree assault of Errol Stuart. The Defendant was subsequently arrested for the murder of Glen Blyden and appeared before the court for advice of his rights on January 31, 2007.

## IV. ANALYSIS

The sole issue for resolution by this Court is whether it is admissible for the People to introduce the Defendant's prior bad acts and prior

40

convictions in its case in chief for the murder of Glen Blyden, Crim. No. ST-07-CR-0000036. The People contend that evidence of the Defendant's prior bad acts is essential to prove the Defendant's state of mind at the time of the crime and to refute any claim that the Defendant was acting "inadvertently, unintentionally, in self-defense or without guilty knowledge" when he stabbed Glen Blyden. The defense argues that the Defendant's prior convictions are prohibited character/propensity evidence, and if admitted, would be unduly prejudicial to the Defendant.

**Evidence of the Defendant's prior bad acts may be admitted by the People pursuant to FED. R. EVID. 404(b), in their case in chief, if it is relevant to prove a material issue other than the Defendant's propensity to commit crimes.**

FED. R. EVID. 404(a) prohibits the admission of evidence of a "person's character or trait of character" to prove "action in conformity with that trait on a particular occasion."[4] Nevertheless, evidence of other crimes, wrongs or acts may be admissible at trial to prove something other than "the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b).[5] Rule 404(b) allows the introduction of any of the Defendant's extraneous acts, whether or not there was a conviction for those prior acts, to show: proof of the Defendant's motive, opportunity, *intent,* preparation, plan, knowledge, identity, absence of mistake or accident or any *other manner that does not suggest a criminal disposition.* FED. R. EVID. 404(b). The court in *United States v. Cruz,* laid out a four (4) prong test for admitting evidence under Rule 404(b). *United States v. Cruz,* 326 F.3d 392 (3d Cir. 2003), quoting *Huddleston v. United States,* 485 U.S. 681, 691-692, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988). The four (4) factors were: (1) whether the evidence offered has a proper purpose; (2) whether the evidence is relevant; (3) whether the probative

---

[4] Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . FED. R. EVID. 404(a).

[5] Evidence of other crimes, wrongs or acts is *not admissible to prove the character of a person in order to show action in conformity therewith.* It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial. FED. R. EVID. 404 (b) (Emphasis added).

value of the evidence outweighs its potential for *unfair* prejudice; and (4) whether a curative instruction can limit the evidence for only the purposes for which it is admitted. *Id.*

 Recapitulating, under Rule 404(b), proposed evidence must be legitimately offered for a purpose other than as propensity/character evidence, and the proposed evidence must be relevant. *Government of Virgin Islands v. Harris*, 938 F.2d 401 (3d. Cir. 1991). To be deemed relevant, the evidence must support or refute a *material fact in issue.* *Government of the Virgin Islands v. Pinney*, 27 V.I. 412, 967 F.2d 912 (3d Cir. 1992) (Emphasis added). "Our primary inquiry, then, is whether the other-acts evidence 'is probative of a material issue other than character.' " *Harris*, 938 F.2d 401, 420 (3d. Cir. 1991) *quoting Huddleston v. United States*, 485 U.S. 681, 686, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988). When requesting that evidence be entered under 404(b), "[t]he Government must provide a clear explanation on the record of the chain of inferences on which it was relying." *United States v. Murray*, 103 F.3d 310 (3d Cir. 1997). If there is no logical connection to a material issue, without referencing the defendant's predisposition to commit bad acts, then the evidence is impermissible. *Harris*, 938 F.2d 401 (3d. Cir. 1991). Furthermore, if the Court subsequently rules that the evidence is admissible, then in its ruling the Court must be able to map out a logical connection between the evidence and its relevance, exclusive of propensity. *Pinney*, 27 V.I. 412, 967 F.2d 912 (3d Cir. 1992). ". . . [T]o admit evidence under subdivision (b) of this rule, [the] court must be able to articulate how evidence logically tends to establish or refute the material fact(s) in issue, and [the] chain of logic must include no link involving inference that a bad person is disposed to do bad acts. . ." *Id.* at 417, quoting *U.S. v. Echeverri*, 854 F.2d 638, 644 (3d Cir. 1988); ("the government must 'clearly articulate how that evidence fits into a chain of logical inferences without averting to a mere propensity to commit crime now based on the commission of crime then.' " *United States v. Cruz*, 326 F.3d 392, 395 (3d Cir. 2003) quoting *United States v. Mastrangelo*, 172 F.3d 288, 295 (3d Cir. 1999)); "All that is needed is *some* showing of a proper relevance". . .Court must "articulate reasons why the evidence [ ] goes to show something other than character." *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992).

 If evidence is being offered under Rule 404(b) to prove the defendant's state of mind, specifically intent, then intent must be an

element of the crime charged and the evidence must be relevant to illuminate the defendant's intent to commit the crime. *United States v. Himelwright*, 42 F.3d 777 (3d Cir. 1994). In other words, the Defendant's state of mind must be a material fact at issue if evidence of such is to be admitted. Where the evidence is being offered to prove the defendant's state of mind at the time of the crime, the court cannot permit evidence that is *too remote* and *too unconnected* to the events surrounding the crime that the Defendant is currently being tried for. *United States v. Johnson*, 879 F.2d 331 (8th. Cir. 1989). To be admitted, the prospective evidence must be, "relevant to a material issue, *similar in kind and close in time to the crime charged*, and substantially more probative than prejudicial." *Johnson*, 879 F.2d 331, 334 (8th. Cir. 1989) (Emphasis added).

■ In *Johnson*, the defendant was tried on the charge of second degree murder. As in this case, the prosecution sought to introduce a prior bad act to provide evidence that the Defendant committed the alleged crime with malice. The court allowed the prosecution to introduce evidence of a prior knife attack by the defendant, which was ostensibly introduced to show malice or specifically "a wanton deviation from a reasonable standard of care [that][sic] warranted the inference that Johnson was aware of the serious risk his actions posed to Joyce Bettelyoun." *Id.* at 334. On appeal, the Court of Appeals for the Eighth Circuit found that the lower court erred in allowing the evidence because the *material issue* at trial was the defendant's state of mind at the *time of the homicide*, and the prior act bore no logical connection to the material issue. *Id.* The Appellate court ultimately ruled that the prior act was improperly admitted as it was too remote and unconnected to the crime charged to be relevant to prove that the Defendant acted with malice when he committed the crime. "[T]he prior act was remote in time, and unconnected to the events surrounding the crime for which Johnson was charged." *Id.* at 334. The Eight Circuit ultimately ruled that in the case of malice "there must appear to be some real connection between the earlier act and the alleged crime *beyond the allegation that both acts spring from a vicious disposition.*" *Johnson*, 879 F.2d 331, 334, quoting *Wakaksan v. United States*, 367 F.2d 639, 645 (8th Cir. 1966) (Emphasis added).

■ *Modus operandi* is used to establish the identity of the accused, or more specifically that the accused was the person that committed the crime. Rule 404(b) can be used to establish *modus operandi* only if the

43

previous actions are so distinctive that it would be more likely that the defendant committed the crime. 29 AM. JUR. 2D *Evidence* § 455 (2008). *"Modus operandi* refers to patterns of criminal conduct in which the method of perpetration is so distinctive that separate crimes are recognized as the handiwork of one person by a characteristic 'signature' " *Id.*

 Once evidence of other wrongs and crimes are found to be offered for a proper and relevant purpose, the probative value must then be balanced against substantial undue prejudice to the defendant, pursuant to FED. R. EVID. 403.[6] Undue prejudice occurs when the evidence causes "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 Advisory Committee's note. When balancing the probative value against the risk of undue prejudice or unfair prejudice, the Court must consider *inter alia* the availability of other means of proof, the effectiveness of a limiting instruction, and any other relevant facts. FED. R. EVID. 403, 404 Advisory Committee's note. Courts have found that Rule 403 is a rule of inclusion that creates a presumption of admissibility and that evidence is rarely excluded under this rule. *United States v. Universal Rehabilitation Services (PA), Inc.,* 205 F.3d 657, 664 (3d. Cir. 2000). Further, if there is doubt about whether the evidence may cause unfair prejudice, the presumption calls for admittance accompanied with an appropriate limiting instruction. *Id.*

Finally, if admitted the Court must give a limiting instruction directing the jury to use the evidence for the limited purpose offered under 404(b).

1. **The prior assault on Luther Christopher offers no probative value to support the contention that the Defendant acted with malice when he killed Glen Blyden and is therefore inadmissible.**

The attack on Luther Christopher ("Christopher") took place on January 9, 2007, three weeks before the act in question. Christopher was in a woman's house in Jah Yard when he heard the Defendant calling for

---

[6] Although relevant, evidence may be excluded if its probative value is substantially out-weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 403.

her outside. Christopher came outside and saw the Defendant with something in his hand. Turning to walk to his car, Christopher felt something strike his elbow from behind. He then turned to see the Defendant running away.

To be admitted under Rule 404(b), Christopher's assault must be offered for a proper purpose and must either support or refute a material issue in contention. *Pinney*, 27 V.I. 412, 967 F.2d 912 (3d Cir. 1992). The Defendant is charged with first degree murder, by stabbing, in violation of V.I. CODE ANN. tit. 14, § 922(a)(1). At trial, the People have the burden of proving beyond a reasonable doubt that the Defendant committed a willful, deliberate, premeditated, unlawful killing with malice aforethought. The People claim that Christopher's assault is relevant to establish the Defendant's motive and to prove that he acted with malice at the time of the alleged murder, arguing that the Defendant has a history of attacking men in the vicinity of Jah Yard with no provocation and that he views Jah Yard (an area in Hospital Ground) as his hunting ground.

 Since the People's burden at trial in this instance is to prove that the Defendant had the requisite state of mind when he committed the crime, the Defendant's state of mind is at issue. Thus, offering evidence to show the Defendant's state of mind would be a proper permissible purpose under 404(b). Additionally, Rule 404(b) specifically enumerates the establishment of motive as a permissible ground for admitting evidence of the defendant's other criminal acts. However, the evidence must be relevant (have probative value) to show the Defendant's state of mind at time of the offense and must fit "into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *United States v. Himelwright*, 42 F.3d 777, 781 (3d Cir. 1994).

 Here, the People have fallen short in meeting the second criteria for admittance under Rule 404(b) because it has not shown through a chain of logical inferences how Christopher's attack is relevant to cast light on the Defendant's motive in killing Blyden, exclusive of propensity. The People simply state that the Defendant, again "without provocation attack[ed] a black man in 'Jah Yard' while [sic][the victim] is distracted and immediately runs away." The People seem to rely on the fact that the Defendant has a general proclivity to attack black men at Jah Yard and that he acted out of this general inclination. This reason seems to lean more towards establishing that the Defendant has a propensity for

attacking people at Jah Yard and that he acted in conformity with that propensity when he killed the victim. The evidence of Christopher's attack is not relevant with regard to motive or absence, and thus impermissible propensity evidence.

 The People also offer Christopher's attack to prove that the defendant acted with malice when he killed Blyden. Malice aforethought describes a state of mind bent on mischief without regard to the consequences of reckless behavior. *Government of the Virgin Islands v. Carmona*, 7 V.I. 441, 422 F.2d 95 (3d Cir. 1970). "The concept of malice aforethought in the Virgin Islands murder statute is not synonymous with premeditation, but may also be inferred from circumstances which show a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences." *Id.* at 452. When offering prior acts to show malice, there must be a "connection between the earlier act and the alleged crime beyond the allegation that both acts spring from a vicious disposition." *Johnson*, 879 F.2d at 334.

 Again the People have failed to specifically establish a logical nexus between the events in the Christopher case and the Defendant's state of mind at the time of the alleged murder in F36/2007 exclusive of proving propensity. Although in both instances the Defendant may have performed what the prosecution describes as unprovoked attacks on unsuspecting men before running away, the events of the Christopher case do not in any way prove that the Defendant acted willfully, intentionally, deliberately and with malice when he killed Blyden. The People have not succeeded in connecting the Christopher attack and the killing of Blyden beyond alleging that both acts spring from a vicious disposition.

 Assuming *arguendo* that there was sufficient logical nexus between the events in Christopher and Defendant's state of mind at the time of the alleged murder of Glen Blyden, where evidence is being offered to prove the defendant's state of mind at the time the crime, the court must disregard evidence too remote and unconnected to the current crime. *Johnson*, 879 F.2d 331. The assault on Christopher occurred on January 9, 2007, almost three (3) weeks before the January 28, 2007 murder of Blyden. The causal connection between the two events other than both attacks occurring in the same location is *de minimis*. The three (3) week gap between Christopher's assault and the murder, together with the lack of a significant connective thread between the two events, makes it too remote to be used at trial.

46

■ The Christopher assault is also insufficient to establish *modus operandi*. The Christopher attack is not significantly similar to the Blyden killing to be considered the Defendant's "signature" and does not present evidence of actions that are so distinctive and unique that it is more likely than not that the defendant committed the crime. Specifically, the Christopher attack was carried out with a "bed iron", while Blyden was stabbed with a "knife". The only similarity between the two crimes is that they both took place in "Jah Yard", which is not distinctive enough to establish *modus operandi*. Ergo, the People have not established a logical connection significant enough between Christopher's assault and the Blyden killing. Accordingly, the Christopher assault will not be admitted under Rule 404(b).

2. **Evidence of the prior assault on Elvis Alcindor is inadmissible because it offers insufficient probative value to support the contention that the Defendant acted with malice when he killed Glen Blyden.**

On March 29, 1995, Elvis Alcindor was driving his car in the vicinity of Hospital Ground when the Defendant crossed the street in front of his car. After parking his car, Alcindor went into his home at Jah Yard. When Alcindor came back to his car he found the Defendant waiting for him in front of the car where the Defendant accused Alcindor of trying to run him over. Alcindor asked the Defendant what he was going to do about it. The Defendant then pulled a knife from his back pocket and chased Alcindor up the street while swinging it. As a result Alcindor sustained a superficial puncture wound to the right side of his abdomen.

Again, the People contend that this evidence is relevant to show that the Defendant's act of killing Blyden was done willfully, intentionally, deliberately with malice aforethought, and not in self defense. The People contend that "a chain of logical inferences show with respect to willfulness, intentionality, deliberation malice aforethought that the Defendant has a zone of comfort or a hunting ground in 'Jah Yard' where he feels free to attack black men he knows with weapons, with the minimal amount of provocation, if any at all."

■ The People have not shown a sufficient connection between Alcindor's assault and the Defendant's state of mind at the time of the killing. The People suggest that the Alcindor incident is relevant to show that the Defendant has repeatedly made attacks at Jah Yard in the past and

will continue to carry out such attacks without any regard to consequences. The evidence on its face offers no probative value to show that the Defendant acted with malice when he killed Glen Blyden, his intent, or that the Defendant did not act in self defense. The fact that the Defendant has committed what could be considered intentional and malicious attacks in the past has no bearing on his state of mind when he committed the instant act. Once again, the evidence seems to suggest that the Defendant has a propensity for committing vicious attacks, and that he acted in conformity with that propensity on that day. Further, the attack on Alcindor which occurred in March of 1995 is far too remote in time from Blyden's murder in January of 2007, to be relevant in proving the Defendant's state of mind at the time of the crime. As in the altercation with Christopher, the People also state that ". . . the Defendant has a zone of comfort or a hunting ground in 'Jah Yard' where he feels free to attack with weapons black men he knows, with the minimal amount of provocation, if any, at all." Here, as in the case of Christopher, the People effectively argue that the Defendant has a propensity for "hunting black men in Jah Yard" and that he was acting in conformity with this propensity when he stabbed Blyden to death, which is prohibited by Rule 404.

### 3. Errol Stuart's assault may be admitted because it is being offered for a reason other than as propensity/character evidence and is sufficiently close in time and connected to Blyden's murder.

Finally, the People offer evidence of the assault on Stuart that occurred on January 28, 2007, moments before the alleged murder of Blyden, under Rule 404(b)'s catchall provision where evidence may be admitted if it is being used for "any other manner that does not suggest a criminal disposition," and to show intent. FED. R. EVID. 404(b). The Defendant has previously stated that he acted in self-defense when stabbing Stuart, before running off to Jah Yard where he was allegedly attacked by a group of men without provocation and was again required to defend himself. The People contend that Stuart's assault is relevant to refute the Defendant's claim of self-defense, and to cast light on the Defendant's state of mind at the time of Blyden's murder.

The People submit that Stuart's assault is relevant to prove state of mind and refute self defense by showing the improbability that the

Defendant would need to use deadly force in such quick succession in two unrelated events. Using the assault to examine the Defendant's need to use deadly force in two instances so close in time and proximity, is a legitimate reason to admit the evidence that is exclusive of proving propensity. Stuart's attack is legitimately relevant for this purpose because: (1) both events happened within minutes of each other; (2) both events happened within the same vicinity; (3) the Defendant appeared "under the influence" in both instances; (4) the victims were both attacked with sharp instruments; and (5) the Defendant claims self defense in both instances. Because the assault is being offered for a purpose other than as "character evidence", it may be used for the *limited purpose* of discrediting the Defendant's claim of self-defense.

Stuart's assault is appropriately similar and chronologically close to the crime charged to be admitted under Rule 404(b). The assault on Stuart happened shortly before Detective George arrived on the scene at approximately 4:30 p.m. Blyden's murder occurred between the 3:50 p.m. and 4:20 p.m. when his friends took him to the hospital. This suggests that both incidences happened between 3:30-4:15 p.m. with the assault happening first. Furthermore, both the assault and murder took place about 2 blocks apart in the vicinity of Hospital Ground and both attacks were carried out with sharp instruments. The totality of these factors lead the Court to the conclusion that Stuart's attack *was not* too remote and disconnected to preclude admission under Rule 404(b).

After examining the evidence for relevance, the Court must assess whether the evidence's probative value substantially outweighs any undue prejudice to the defendant. *Pinney*, 27 V.I. 412, 967 F.2d 912 (D.C.V.I. 1992). (". . . [S]uch evidence is subject only to the limitations imposed by Federal Rules of Evidence 402 and 403.") In the case *sub judice*, the evidence is probative to dispute the Defendant's claim of self-defense. However, because of the nature of the assault on Stuart, it is clear that it has the potential to cause *prejudice* in that it may enflame the jury's emotions; however the *standard* for exclusion is *unfair prejudice*. Given the People's burden in establishing deliberate, willful, premiditated, unlawful killing with malice aforethought, the evidence outweighs any unfair prejudice.

## V. CONCLUSION

Evidence can only be admitted under FED. R. EVID. 404 when the evidence is relevant to support a material fact at issue without referring to

the defendant's criminal propensity, and when its probative value is not substantially outweighed by the risk of undue prejudice. When being offered to prove the defendant's state of mind at the time of the crime, evidence that is too remote or unconnected to the crime will not be admitted. Evidence of the assault on Elvis Alcindor and Luther Christopher are too remote and unconnected from the murder of Glen Blyden to be admitted, and do not support a material fact at issue. However, the assault of Errol Stuart is being offered for a relevant purpose other than to show propensity, and any unfair prejudice to the Defendant is outweighed by the probative value of admitting the attack on Errol Stuart. Accordingly, the People's Motion to admit the prior assaults of Luther Christopher and Elvis Alcindor is denied. The motion, however, to admit the assault on Errol Stuart is granted.