931 So.2d 60 (2005)
Shaber Chamond WIMBERLY
v.
STATE of Alabama.
CR-00-1772.
Court of Criminal Appeals of Alabama.
August 26, 2005.
Opinion on Return to Remand November 23, 2005.
*61 Bill Kominos, Ozark, for appellant.
William H. Pryor, Jr., and Troy King, attys. gen., Margaret Mary (Missy) Fulmer, deputy atty. gen., and Kristi L. Deason Hagood and Corey L. Maze, asst. attys. gen., for appellee.
McMILLAN, Presiding Judge.
The appellant, Shaber Chamond Wimberly, was convicted of five counts of capital murder for murdering Max King and Johneen King during the course of a robbery *62 and a burglary, violations of §§ 13A-5-40(a)(2) and 13A-5-40(a)(4), Ala.Code 1975. The jury recommended, by a vote of 7 to 5, that Wimberly be sentenced to life imprisonment without the possibility of parole. The trial court overrode the jury's recommendation and sentenced Wimberly to death.[1]
The circuit court stated the following about the evidence presented at Wimberly's trial:
"On Sunday, January 26, 1997, during the evening hours, Max D. King and Johneen King were murdered at their home, located at Route 2, Box 4, Midland City, Alabama.
"On Sunday, January 26, 1997, the Kings were at their home on Highway 134, between Midland City and Pinckard, Alabama. Their motor vehicles were parked in their driveway and in their garage or carport. Their lights were on. It was obvious to anyone that the Kings were at home and awake. Their dwelling was occupied.
"The defendant and Calvin Butler approached the Kings' home and knocked on the door. The defendant and Calvin Butler were under the guise that they were looking for a particular person or house. When Mr. King responded to the knock at the door, the defendant and his associate or accomplice, Calvin Butler, forced their way into the home. Mr. King was forced to lay down on the den floor in front of the television and was shot through the top of the head with a nine millimeter pistol. According to the autopsy reports and the testimony of Dr. Parades, the forensic medical examiner, the bullet entered the top of the head, passed through the brain, then exited the throat and neck area.
"The defendant then escorted Mrs. King to the kitchen area in search of her purse and money and shot Mrs. King in the top of the left side of the head.
"Both Mr. and Mrs. King were shot with a 9mm pistol at close range one time into the head.
"The defendant and his accomplice or associate, Calvin Butler, took or stole Mr. King's wallet, a .357 revolver, a 30/30 rifle, Mrs. King's purse and contents, a toolbox and a safe which contained several hundred dollars during the course of the burglary, robbery and double murder."
(C.R. 63-64.)
The State's evidence also showed that the police investigation focused on Wimberly after Mary Spivey was murdered in June 1997 in Dale County and Wimberly was arrested and charged with her murder.[2] Forensic testing of the bullets that killed Spivey matched the bullets that killed the Kings. Calvin Butler, Wimberly's codefendant in the Dale County murders, pleaded guilty to five counts of capital murder for his involvement in the murders. Butler testified at Wimberly's trial that Wimberly shot and killed both Max King and Johneen King.

*63 Roper v. Simmons

The record shows that Wimberly was born on September 6, 1979, and that the Kings were murdered on January 26, 1997. Wimberly was 17 years of age at the time of the murders. The United States Supreme Court in Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), held that it was unconstitutional to execute an offender who was under the age of 18 when he committed the offense. This decision abrogated that court's earlier decision in Stanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989), which upheld the execution of offenders who were over the age of 16 when the offense was committed. The United States Supreme Court's decision in Roper applies to Wimberly because his case was pending on direct appeal when the decision in Roper was released. See United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).
Because Wimberly was under the age of 18 when he committed the murders, his sentence of death is due to be set aside. This case must be remanded for the Dale Circuit Court to set aside Wimberly's death sentence and to sentence him to the only other available sentence  life in the penitentiary without the possibility of parole. § 13A-5-45(a), Ala.Code 1975.[3]
This Court is authorized to search the record for plain error only in those cases in which the defendant has been sentenced to death. See Rule 45A, Ala.R.App.P. Because Wimberly is to be resentenced to life imprisonment without the possibility of parole, we do not apply the plain-error standard of review when reviewing this case. Therefore, any issues that we address on appeal must have been raised in the circuit court and presented in Wimberly's brief to this Court. "We have repeatedly stated that this court has appellate jurisdiction only and cannot consider matters on appeal that have not first been presented to the trial court for its determination." Samuels v. Alabama Bd. of Pardons & Paroles, 687 So.2d 1287, 1290 (Ala. Crim.App.1996).

I.
Wimberly argues that the trial court erred in denying his Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), motion. Specifically, Wimberly argues that the trial court erred in finding that he failed to present a prima facie case of racial discrimination.
The State argues that the trial court's finding that no prima facie case of discrimination had been established was proper because to establish a prima facie case the defense relied solely on the number of strikes used to remove black veniremembers. We agree with the State.
The record shows that the State had 27 peremptory strikes and that it used 7 of those strikes to remove black veniremembers. Wimberly made the following Batson objection at trial:
"[Defense counsel]: Let the record show that we are in the Judge's chambers and the prosecutor and myself just got through striking the jury. The jury has not been impaneled or sworn in. I am making a motion pursuant to Batson v. Kentucky, and Ex parte Thomas, [659 So.2d 3 (Ala.1994)], an Alabama Supreme Court case.
"Let the record show that the defendant is a black man, that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race, specifically there were *64 nine blacks on the venire and the prosecutor struck seven of them.
"Also, peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. The prosecutor has failed to elicit from the venire during voir dire any race-neutral reasons for striking the black veniremen, which raises an inference that the prosecutor used peremptory challenges to exclude or strike black veniremen from the petite jury on account of their race.
"The Court: Okay.
"[Prosecutor]: [Defense counsel], you may have just misstated this, but 
"The Court: Yes, but he read from the old transcript.
"[Prosecutor]: Well, its true that there were nine blacks, but four of them are still on the jury. You said that seven were struck by the State."
(R. 217-18.)
"The party claiming a Batson violation must first establish a prima facie case of discrimination before the other side is required to state its reasons for its peremptory strikes." Woods v. State, 845 So.2d 843, 844 (Ala.Crim.App.2002). As this Court stated in McElemore v. State, 798 So.2d 693, 696 (Ala.Crim.App.2000):
"Procedurally, the party alleging racial discrimination in the use of peremptory challenges bears the burden of establishing a prima facie case of discrimination. Ex parte Branch, 526 So.2d 609, 622 (Ala.1987). `"[I]t is important that the defendant come forward with facts, not just numbers alone, when asking the [trial] court to find a prima facie case"' of racial discrimination. Mitchell v. State, 579 So.2d 45, 48 (Ala.Cr.App.1991), cert. denied, 596 So.2d 954 (Ala.1992), quoting United States v. Moore, 895 F.2d 484, 485 (8th Cir.1990)."
Clearly, Wimberly failed to establish a prima facie case of racial discrimination because he relied solely on the number of blacks that had been struck by the State. The circuit court's ruling was not erroneous.

II.
Wimberly argues that the trial court erred in allowing the State to introduce evidence that the same gun that killed the Kings was the gun that was used to kill Mary Spivey in Houston County in June 1997. He contends that evidence of Spivey's murder was prejudicial and did not fit within any exception to the exclusionary rule. He specifically argues that the evidence was not admissible under the identity exception.
In Wimberly v. State, [Ms. CR-99-1241, April 29, 2005] ___ So.2d ___ (Ala.Crim. App.2005), Wimberly's appeal from his conviction for capital murder arising out of Spivey's murder, we held that evidence of the murders of the Kings was admissible under the common plan, design, scheme, system or pattern exception to the general exclusionary rule. We stated:
"[E]vidence of the [Kings'] murders was admissible under the exception to the general exclusionary rule allowing such evidence if it shows a common plan, design, scheme, system, or pattern. As stated in [C. Gamble,] McElroy's Alabama Evidence:

"`Evidence of the accused's commission of another crime or act is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other crime or act were committed in keeping with or pursuant to a single plan, design, pattern, scheme or system. This rule is applicable whether such plan, design, *65 pattern, scheme or system is narrow and specific in scope or is measurably broad and general in scope. The majority of decisions speak of this as the plan or scheme exception. Others, however, refer to it as proving a system or pattern. Dean McCormick spoke of it as justifying the admission of collateral crimes or acts when offered to prove "the existence of a larger plan, scheme, or conspiracy, of which the crime on trial is a part."
"`The present purpose differs from knowledge or intent in several respects. First, the plan, design, scheme or pattern is not an element of the crime charged and, consequently is always material or of consequence in the case. Such ever-present materiality causes the application of the exception to focus upon whether the other acts do indeed have a tendency to show a plan or scheme. A second difference lies in the fact that a single collateral crime or act could be sufficient to show knowledge or intent but, in contrast, it generally takes more than a single act to form a plan or scheme. Last, a greater degree of similarity between the charged crime and the collateral act is required when the latter is offered to prove plan or scheme rather than intent.'
"McElroy's Alabama Evidence § 69.01(6) [5th ed. 1996.)] (footnotes omitted).
"Here, there were similarities between the murders. As this Court noted in our opinion reversing Wimberly's convictions for the [Kings'] murders:
"`Six months later [after the Kings' murders], another person living near Dothan, Alabama, was murdered and her store and home, which was in the back of the store, was burglarized; the killers used the identical modus operandi as that used in the King murders.'
"Wimberly v. State, 759 So.2d 568, 569 (Ala.Crim.App.1999), cert. denied, 759 So.2d 574 (Ala.2000). Specifically, all three murders were residential robbery/murders, two perpetrators were involved in each case, the same weapon was used in all three murders, all the victims were shot in the head, a cash register was taken during the Houston County murder and a safe was taken in the [Kings'] murders, and Wimberly's fingerprints were found at each crime scene. The circuit court correctly allowed evidence of the Dale County murders to be introduced."
___ So.2d at ___. Here, evidence of Spivey's murder was likewise admissible in Wimberly's Dale County trial for the murder of the Kings for the reasons that were detailed in our opinion in Wimberly v. State, [Ms. CR-99-1241, April 29, 2005] ___ So.2d ___ (Ala.Crim.App.2005).
For the reasons stated above, this case is remanded for the Dale Circuit Court to set aside Wimberly's sentence of death and to resentence Wimberly to life imprisonment without the possibility of parole.
AFFIRMED AS TO CONVICTION; REMANDED WITH INSTRUCTIONS AS TO SENTENCE.
COBB, BASCHAB, SHAW, and WISE, JJ., concur.

On Return to Remand
McMILLAN, Presiding Judge.
The appellant, Shaber Chamond Wimberly, was convicted of five counts of capital murder and was sentenced to death. Wimberly appealed. We remanded this case to the circuit court for that court to set aside Wimberly's death sentence because Wimberly was 17 years of age when *66 he committed the murders. See Wimberly v. State, 931 So.2d 60 (Ala.Crim.App.2005), relying on Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).
The circuit court has complied with our instructions and has set aside Wimberly's sentence of death and sentenced Wimberly to the only other available sentence  life imprisonment without the possibility of parole. See § 13A-5-45(a), Ala.Code 1975. In our earlier opinion we addressed the other issues raised on direct appeal, and we affirmed Wimberly's conviction. Wimberly's sentence of life imprisonment without the possibility of parole is now affirmed.
AFFIRMED AS TO SENTENCE.
COBB, BASCHAB, SHAW, and WISE, JJ., concur.
NOTES
[1] This is an appeal from Wimberly's second trial and conviction for murdering the Kings. His first conviction was reversed because of the erroneous admission at trial of his statement to police. See Wimberly v. State, 759 So.2d 568 (Ala.Crim.App.1999).
[2] Wimberly was convicted of capital murder for killing Spivey during the course of a robbery and a burglary. He was sentenced to death. We recently remanded that case for the Houston Circuit Court to set aside Wimberly's sentence of death because he was 17 years old when he killed Spivey. See Wimberly v. State, [Ms. CR-99-1241, April 29, 2005] ___ So.2d ___ (Ala.Crim.App.2005).
[3] Because Wimberly's death sentence must be vacated, any questions concerning the validity of the death penalty are rendered moot and will not be addressed in this opinion.